UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JODI CRANDELL and JUAN ONTIVEROS, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC. and VOLKSWAGEN AKTIENGESELLSCHAFT,<br><br>Defendants. | Civil Action No.: 18-cv-13377<br><br>**CLASS ACTION COMPLAINT** |

The allegations herein are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel.

**INTRODUCTION**

1.      Plaintiffs Jodi Crandell and Juan Ontiveros ("Plaintiffs") bring this class action individually and on behalf of all persons in the United States who purchased or leased a Volkswagen Touareg vehicle manufactured between December 2014 and November 2017 (the "Class Vehicles" or "Touaregs") that were designed, manufactured, distributed, marketed, sold, and/or leased by Defendants Volkswagen Group of America, Inc. ("VW USA") and Volkswagen Aktiengesellschaft ("VW AG") (collectively, "VW" or "Defendants").

2.      Defendants wrongfully and intentionally concealed a defect in the Class Vehicles' engines and air intake systems.  The air intake systems in the Class Vehicles are equipped with drain valves that do not allow water to drain properly from the engine

1

compartment (the "Drain Valve Defect"). This allows water to collect in the bottom of the Touaregs' air boxes, thereby damaging the vehicles' air filters. Even worse, the Drain Valve Defect allows water to be ingested into the Touaregs' engines and cause sudden engine failure.

3. The Drain Valve Defect presents a significant safety risk for Plaintiffs and Class members because when the Drain Valve Defect manifests itself, the Class Vehicles lose engine power, which causes a loss in the ability to accelerate, maintain speed, and/or adequately control the steering wheel or fully engage the brakes. The Drain Valve Defect has been documented to occur without warning during vehicle operation and poses an extreme and unreasonable safety hazard to drivers, passengers, and pedestrians. Drivers and occupants of the Class Vehicles are therefore at risk for rear-end collisions and other accidents as a result of Defendants' failure to disclose the existence of the Drain Valve Defect and the corresponding safety risk.

4. Knowledge and information regarding the Drain Valve Defect was in the exclusive and superior possession of Defendants and their network of authorized dealers, and was not provided to Plaintiffs and Class members, who could not reasonably discover the defect through due diligence. Based on pre-production testing, design failure mode analysis, and consumer complaints, inter alia, Defendants were aware or should have been aware of the Drain Valve Defect in the Class Vehicles and fraudulently concealed it from Plaintiffs and Class members.

5. Defendants have known about the Drain Valve Defect since at least the beginning of 2018. In March of 2018, Defendants' Chinese Division ("VW China") recalled 33,142 Touaregs manufactured between December 2014 and November 2017. The recall was announced after the Chinese General Administration of Quality Supervision, Inspection and

2

Quarantine detected the faulty drain valves in Touareg models.  In connection with the announcement, Volkswagen AG stated that "We are sincerely regretful that the faulty drain valves in the Touareg SUVs have caused inconvenience to our Chinese customers."[1]

6.      Despite Defendants' knowledge of the Drain Valve Defect, Defendants never disclosed to U.S. consumers, including Plaintiffs and Class members, that the defect exists or that drivers and occupants of the Class Vehicles are at risk.  As a result of their reliance on Defendants' omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered an ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

7.      Defendants breached their express and implied warranties through which they promised to, inter alia, (1) provide Class Vehicles fit for the ordinary purpose for which they were sold; and (2) repair and correct manufacturing defects or defects in materials or workmanship of any parts they supplied, including the Drain Valve Defect.  Because the Drain Valve Defect was present at the time of sale or lease of the Class Vehicles, Defendants are required to repair or replace the engine under the terms of the warranties.

8.      Defendants misrepresented the standard, quality or grade of the Class Vehicles and knowingly, actively, and affirmatively concealed the existence of the Drain Valve Defect to increase profits and decrease costs by selling additional Class Vehicles while avoiding the cost of recall or service campaign.[2]

---

[1] https://www.caixinglobal.com/2018-03-16/volkswagen-apologizes-for-engine-defect-101222386.html (last visited August 24, 2018).

[2] Although the Touareg is no longer sold in the United States, in the fall of 2015 Defendants stopped selling all 2014-2016 Touaregs with TDI (i.e., diesel) engines in the United States due to the diesel emissions scandal, many of which were brand new.  Defendants began offering these leftover TDI Touaregs for sale in December 2017 after a software fix was approved.  *See*

9.      Plaintiffs and Class members assert claims against Defendants for fraud, negligent misrepresentation, breach of express and implied warranties, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*, the Texas Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*, the Virginia Consumer Protection Action, VA Code Ann. § 59.1-196, *et seq.*, and unjust enrichment.

10.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  This Court has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367.

11.      This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 Class members, members of the Classes (as defined below) are citizens of states different from Defendants, and greater than two-thirds of the members of the Classes reside in states other than the states in which Defendants are citizens.

12.      Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because VW USA is incorporated in New Jersey, and Defendants have marketed, advertised, sold, and/or leased the Class Vehicles within this District through numerous dealers doing business in the District, including in Cherry Hill and Blackwood.  Defendants' actions have caused harm to Plaintiff Crandell, a New Jersey resident, as well as hundreds of Class members residing in New Jersey.  Additionally, VW USA maintains the following offices

---

https://www.consumerreports.org/suvs/audi-and-vw-offer-deep-discounts-on-fixed-diesel-suvs/ (last visited August 28, 2018).

and/or facilities in New Jersey: (1) the "VW/Audi VCI Eastern Region" in Woodcliff, New Jersey; (2) the "Product Liaison Group" in Ridgefield, Edgewater and Allendale, New Jersey; (3) and the "Parts/Region Distribution Center" in Cranbury, New Jersey.[3] Defendants contacts with this District are therefore sufficient to subject Defendants to personal jurisdiction in the District and venue is proper.

## PARTIES

### Plaintiffs

13.     Plaintiff Jodi Crandell is a citizen of the State of New Jersey and resides in Glen Rock, NJ.  In or around March 2017, Plaintiff Crandell leased a 2017 Touareg from Jack Daniels Volkswagen – a Volkswagen authorized dealer in Fair Lawn, NJ – for her personal or household use.

14.     Unbeknownst to Plaintiff Crandell at the time of lease through present, Plaintiff Crandell's Touareg contained the Drain Valve Defect.  Given the latent nature of the Drain Valve Defect, Plaintiff Crandell's Touareg is subject to sudden, unexpected engine failure at any time due to the ingestion of water.  Defendants have never informed Plaintiff Crandell of the Drain Valve Defect and corresponding safety risk associated with her Touareg.  However, Plaintiff Crandell has experienced sudden engine failure in her Touareg due to the Drain Valve Defect on two separate occasions.

15.     In October 2017, the Drain Valve Defect caused sudden engine failure in her Touareg while leaving her driveway.  As explained to the dealership, Plaintiff Crandell experienced "sudden knocking/banging sound in the vehicle, followed by an abundance of

---

[3] *See* About Us, Locations, Volkswagen Group of America, http://www.volkswagengroupofamerica.com/locations (last visited August 23, 2018)

white exhaust then the power shuts down.  This cuts out power steering and power brakes - a serious safety concern when driving at full speed."  Volkswagen towed Plaintiff Crandell's Touareg to the dealership.  Nearly a week later her dealer reported that no problem was found and returned the Touareg to Plaintiff Crandell.

16.     In July 2018, the engine in Plaintiff Crandell's Touareg suddenly failed for a second time due to the Drain Valve Defect – this time while Plaintiff Crandell was driving in traffic at speed.  Fortunately, Plaintiff Crandell avoided a serious accident despite losing the ability to control the steering and brakes on her Touareg due to the sudden loss of engine power caused by the Drain Valve Defect.  Following an inspection, Plaintiff Crandell's dealership informed her that water had leaked into the air filter.  Plaintiff Crandell's dealership subsequently accused her of intentionally driving through a lake of water in order to damage her Touareg.  The service manager at Plaintiff Crandell's dealership informed her that it would cost "$649.00 + tax" to change the oil and air filter, and to perform the diagnostic tests necessary to determine whether the Drain Valve Defect had caused internal damage to the Touareg's engine.

17.     After bringing the issue to the attention of the general manager of Plaintiff Crandell's dealership, Defendants sent an engineer to inspect Plaintiff Crandell's Touareg. The inspection confirmed the existence of the Drain Valve Defect.  According to the dealer invoice, the inspection revealed that the "drain in air guide was clogged with debris."  The invoice further confirms that Defendants purportedly "repaired" the Drain Valve Defect in Plaintiff Crandell's Touareg by "clear[ing] and trimm[ing] [the defective] drain" valve. Defendants' purported "repair" of Plaintiff Crandell's Touareg – through modification of the faulty drain valve itself – confirms the existence of the Drain Valve Defect in the Class

6

Vehicles.

18.     Despite acknowledging the existence of the Drain Valve Defect in the Class

Vehicles, Defendants have failed to provide a meaningful resolution to this dangerous issue

for all Class Vehicles.  As the invoice from Plaintiff Crandell's dealership confirms, these

"repairs [were] performed as a one time goodwill" per the service manager, rather than

pursuant to a recall or service campaign for the Class Vehicles initiated by Defendants.

19.     Plaintiff Juan Ontiveros is a citizen of the State of Texas and resides in Grand

Prairie, Texas.  In March 2015, Plaintiff Ontiveros purchased a 2015 Touareg from Hiley

Volkswagen of Arlington– a VW authorized dealer in Arlington, TX – for his personal or

household use.

20.     Unbeknownst to Plaintiff Ontiveros at the time of purchase through present,

Plaintiff Ontiveros' Touareg contained the Drain Valve Defect.  Given the latent nature of the

Drain Valve Defect, Plaintiff Ontiveros' Touareg is subject to sudden, unexpected engine

failure at any time due to the ingestion of water.  Defendants have never informed Plaintiff

Ontiveros of the Drain Valve Defect and corresponding safety risk associated with his

Touareg.

21.     None of the advertisements reviewed or representations received by Plaintiffs

and Class members contained any disclosure relating to the Drain Valve Defect in the Class

Vehicles.  Had Defendants disclosed that the Drain Valve Defect could cause safety issues

such as total engine failure, Plaintiffs would not have purchased or leased their Touaregs on

the terms that they did, or they would have paid less for them.

22.     When Plaintiffs and Class members purchased or leased their Class Vehicles,

they reasonably relied on the reasonable expectation that the Class Vehicles' drain valves

and/or engines would last beyond the warranty periods without need for repair or replacement and/or would not pose an unavoidable safety risk.  Had Defendants disclosed that, due to the Drain Valve Defect, the Class Vehicles' drain valves and/or engines were prone to premature failure and/or an unavoidable safety risk, Plaintiffs and Class members would not have purchased or leased the Class Vehicles or would have paid less for their vehicles.

23.     The Class Vehicles were operated in a reasonably foreseeable manner and as the vehicles were intended to be used.  Plaintiffs and Class members have suffered an ascertainable loss as a result of Defendants' deceptive conduct, breach of warranty, common law and statutory duties, and omissions and/or misrepresentations associated with the Drain Valve Defect, including but not limited to, out-of-pocket losses and/or the costs of future repairs or replacements, and diminished performance and value of their respective vehicles.

24.     Neither Defendants nor any of their agents, dealers, or other representatives informed Plaintiffs and Class members of the premature failure of the drain valves and/or engines and/or the defective nature of the drain valves and/or engines prior to the purchase or lease of the Class Vehicles, or at any time since.  VW maintains an online webpage titled "Recall / Service Campaign Lookup" for just this purpose.[4]  However, entry of the Vehicle Identification Numbers ("VINs") for Plaintiffs' Touaregs reveals nothing about the Drain Valve Defect.

**Defendants**

25.     Defendant VW AG is a German corporation with its principal place of business in Wolfsburg, Germany.  VW AG is one of the largest automobile manufacturers in the world, and is in the business of designing, developing, manufacturing, and selling automobiles.  VW

---

[4] http://www.vw.com/owners-recalls.m.m.m.m/ (last visited August 24, 2018).

AG is the parent corporation of VW USA.

26.     Defendant VW USA is a New Jersey corporation doing business throughout the United States.  VW USA maintains its principal place of business in Herndon, Virginia, where the majority of its 8,000 United States employees are based.

27.     VW USA is a wholly owned U.S. subsidiary of VW AG, and it engages in business, including the advertising, marketing, and sale of VW automobiles nationwide in the United States on behalf of VW AG.  At all relevant times, VW USA acted as an authorized agent, representative, servant, employee, and/or alter ego of VW AG while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information, and monitoring the performance of VW vehicles in the United States, including substantial activities that occurred within this jurisdiction.

28.     At all times relevant to this action, Defendants manufactured, distributed, sold, leased, and warranted the Class Vehicles under the VW brand name throughout the United States.  Defendants and/or their agents designed, manufactured, and/or installed the drain valves and engines in the Class Vehicles.  Defendants and/or their agents also developed and disseminated the owner's manuals and warranty booklets, USA Warranty and Maintenance schedules, advertisements, and other promotional materials relating to the Class Vehicles.  These activities were all controlled and/or conducted from VW USA's headquarters in Herndon, VA.

29.     Defendants also provide service and maintenance for the Class Vehicles through their extensive network of more than 1,000 authorized dealers and service providers nationwide.  At all relevant times, each Volkswagen-authorized dealership and service provider acted as an authorized agent, representative, servant, employee and/or alter ego of

VW AG and/or VW USA while performing activities including but not limited to advertising, warranties, warranty repairs, dissemination of technical information and monitoring the performance of VW vehicles in the United States, including substantial activities that occurred within this jurisdiction.

## FACTUAL ALLEGATIONS

### The Drain Valve Defect

30.    Upon information and belief, Defendants have sold, directly or indirectly through dealers and other retail outlets, many thousands of Class Vehicles in New Jersey, Texas, and nationwide.

31.    The Drain Valve Defect causes the Class Vehicles' engines to unexpectedly malfunction resulting in a loss of power, a loss of power steering, and a loss of brakes.  The Drain Valve Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers because it severely impacts a driver's ability to control the vehicle under normal driving conditions.

32.    Knowledge and information regarding the Drain Valve Defect were in the exclusive and superior possession of Defendants and their dealers, and that information was not provided to Plaintiffs and Class members.

33.    Based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Defendants' network of exclusive dealers, aggregate service records compiled from those dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to dealers and the National Highway Traffic Safety Administration ("NHTSA"), testing performed in response to consumer complaints, and the

China Recall, inter alia, Defendants were aware (or should have been aware) of the premature failure of the Drain Valve Defect in the Class Vehicles and fraudulently concealed the defect and safety risk from Plaintiffs and Class members, Defendants knew, or should have known, that the Drain Valve Defect was material to owners and lessors of the Class Vehicles and was not known or reasonably discoverable by Plaintiffs and Class members before they purchased or leased Class Vehicles.

34.     Moreover, in March of 2018, Volkswagen announced that on April 30, 2018 it would initiate a recall of 33,142 Chinese-market Touaregs manufactured between December 2014 and November 2017 (the "China Recall").  The recall was announced after the Chinese General Administration of Quality Supervision, Inspection and Quarantine found that the faulty drain valves do not allow water to clear out of the engine properly and could potentially lead to safety problems.  In connection with the announcement, Volkswagen AG stated that "We are sincerely regretful that the faulty drain valves in the Touareg SUVs have caused inconvenience to our Chinese costumers."[5]

**Defendants' Knowledge Of The Drain Valve Defect**

35.     Defendants had and have a duty to fully disclose the true nature of the Drain Valve Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Drain Valve Defect poses an unreasonable safety hazard; because Defendants had and have exclusive knowledge or access to material facts about the Class Vehicles' drain valves and/or engines that were and are not known to or reasonably discoverable by Plaintiffs and Class members; because Defendants have actively concealed the Drain Valve Defect from

---

[5] https://www.caixinglobal.com/2018-03-16/volkswagen-apologizes-for-engine-defect-101222386.html (last visited August 24, 2018).

Class members; and because of consumer complaints, such as those made to NHTSA, which

Defendants should monitor as part of a continuous obligation to identify potential defects in

their vehicles.

36.     The complaints of numerous purchasers and lessees of the Class Vehicles

demonstrate that the Drain Valve Defect is widespread and dangerous.  For example, on July

24, 2018, Plaintiff Crandell made the following complaint to NHTSA: [6]

- **Date Complaint Filed:** July 24, 2018
  **Date of Incident:** July 23, 2018
  **Component(s):** ELECTRICAL SYSTEM, ENGINE, UNKOWN OR OTHER
  **NHTSA ID Number:**  11113263
  **Consumer Location:** GLEN ROCK, NJ
  **Vehicle Identification No. (VIN):** WVGRF7BP6HD****
  **Summary of Complaint:**
  AFTER A RAINY NIGHT, GOT INTO MY CAR THE NEXT MORNING
  HEARD A WEIRD NOISE WHILE PULLING OUT OF DRIVEWAY,
  DROVE DOWN THE STREET AND CAR STARTING BUCKING, WHITE
  SMOKE COMING OUT BACK AND LOST CONTROL OF THE CAR...NO
  POWER STEERING, NO BRAKES CAR DIED. THIS IS THE SECOND
  TIME THIS HAPPENED TO ME, IT HAPPEN 9 MONTHS PRIOR. HAD
  ROADSIDE SERVICE PICK UP CAR AND BRING TO SERVICE. CALLED
  SERVICE THE NEXT MORNING AND WAS ACCUSED OF DRIVING MY
  CAR THROUGH WATER AND THE CAR FILTERS GOT WET AND
  POSSIBLE WATER NOW IN THE ENGINE. VW WOULD NOT BE
  RESPONSIBLE! I NEVER DROVE IN STANDING WATER, THIS
  HAPPENED AFTER A RAINY NIGHT OF MY CAR SITTING ON MY
  FLAT DRIVEWAY. THERE IS SOMETHING WRONG WITH THIS CAR
  AND IS COMPLETELY UNSAFE TO DRIVE AFTER RAIN OR IN THE
  RAIN.

37.     Other owners of the Class Vehicles have made similar complaints to NHTSA:

- **Date Complaint Filed:** June 26, 2018
  **Date of Incident:** June 1, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:**  11104107
  **Consumer Location:** ASHBURN, VA
  **Vehicle Identification No. (VIN):** WVGEF7BP5HD****
  **Summary of Complaint:**

---

[6] https://www.nhtsa.gov/vehicle/2017/VOLKSWAGEN/TOUAREG/SUV/AWD (last visited August 24, 2018)

THE TOUAREG HAS A DESIGN FLAW THAT HAVE THE ENGINE AIR INTAKE UNDER NEATH THE FRONT HEADLIGHT, WHICH, UNDER HEAVY RAIN, WILL LET WATER FLOW THOUGH TO THE INTAKE PIPE AND GET INTO THE ENGINE. I HAVE PERSONALLY VALIDATED THIS AS MY AIR FILTER GETS SOAKING WET AFTER A HEAVY RAIN. THERE HAVE ALSO BEEN NUMEROUS BREAK-DOWN-IN-THE-ROAD REPORTS TO VOLKSWAGEN BUT THE MANUFACTURER HAS YET TO TAKE ANY ACTION.

- **Date Complaint Filed:** May 23, 2018
  **Date of Incident:** May 21, 2018
  **Component(s):** ENGINE
  **NHTSA ID Number:** 11097606
  **Consumer Location:** Unknown
  **Vehicle Identification No. (VIN):** WVGRF7BP1HD****
  **Summary of Complaint:**
  WATER WAS FOUND IN THE AIR FILTER AND ENGINE. SERVICE ADVISER STATED THAT THE VEHICLE WAS IN WATER. I REPLIED THAT THE VEHICLE HAS BE DRIVEN IN HEAVY RAIN AND SITS OUTSIDE IN THE WEATHER. ACCORDING TO THE SERVICE ADVISER THE ENGINE NEED TO BE REPLACED. I HAVE RESEARCHED ONLINE AND FOUND SEVERAL MORE SIMILAR SITUATIONS. THIS SITUATION HAS CAUSED THE ENGINE TO SEIZE AND SHUT DOWN.

38.     Internet forums for the Touareg are replete with similar complaints from

owners of the Class Vehicles:[7]

- Thursday, July 6 big rain (3" between midnight and 6 AM), still raining hard at 9:00 AM. Wife left for work (in hard rain), vehicle limped briefly then quit running after 100 yards. Did not drive through standing water. Vehicle transported to dealer via roll-back. Dealer says water in engine - serious damage.

  Vehicle sat on driveway in the rain through the night - not moved until 9:00 AM.

  I can't get my mind around how driving the vehicle in a hard rain could result in engine ingesting water. Is there any experience with this issue within the forum?

  Thanks. Comments appreciated.

- Here's an update - Ethan - I'm still trying to get any information from VW China

---

[7] https://www.clubtouareg.com/forums/f95/2017-sport-w-tech-engine-ingested-water-263721.html (last visited August 24, 2018).

and People's Republic of China on the recall no luck (yet). Background: Purchased vehicle new in April 2017 from Annapolis, MD VW dealer. Dealer found the desired color at Virginia Beach, VA VW dealer (about 200 miles away), when vehicle accepted, had 600 miles on odometer. Carfax shows vehicle at Virginia Beach dealer 08/15/2016. Vehicle returned to us 09/06/17 with new factory engine. Dealer and VW America refused to honor warranty, stated "outside influence". Insurance paid for repairs and rental vehicle ($14,312.27), I am out $500.00 (comprehensive deductible) at this point. Since original problem not known at this point, family is not satisfied with repaired vehicle. We negotiated trade-in with Annapolis dealer for another 2017 Touareg, some financial assistance from VW America, we are now out $7299.74, but we have a new vehicle with a complete warranty (replacement engine was only warrantied for one year). Now I can look for the problem.

I looked at the air filter element on the new Touareg today, it was wet on the bottom. There is a drain at the low point of the tube TO the air box (from the front of the vehicle), it was completely blocked with fine dirt. The drain at the bottom of the air box was restricted by dirt, but open. Obviously, as previously posted, the air system design is faulty by design. I will have to keep these drains clear by frequent service and replacing a bunch of air filter elements. DO NOT use any 3rd party filters - they don't have the foam mesh part of the filters - use VW parts. I am not done with VW America by as long shot. I will post more as things develop - comments appreciated.

- I have the exact same problem with my 2015 Sport. I have checked twice after rain and both times the bottom of the filter and filter housing are wet. Drain or no drain, water in the intake is wrong. Is the water coming from the air intake port? Coming up the drain tube? Splashing in the the bottom air box tabs?

- I would agree that this occurs sitting there. My wife works 2 miles away and was parked in the rain all day when I found it wet. Since this is coming up on 2015 and newer, was the nose redesigned for 2015?

- Just got the news today that my engine has water inside.

  Dream car to drive in the rain, but I had to drive through heavy rain from Indiana to Virginia the beginning of the month.  Got to destination and back home without a problem.  Left the car sitting for several days while I flew west.  When I got home it ran for about 1/4 mile then died, never to start again.  Dealer informed me that I had driven the car into water.  I explained that it was only driven in rain.  The Dealer suggested that I contact my insurance to report that the car had sustained flood d damage.  Insurance won't cover engine.  Waiting to hear back from VW Customer Service.

- I checked my 2012 Touareg TDI a month ago when it rained really hard, and it was bone dry.  I didn't change air filter for more than a year (as soon as I heard

about the buyback).  Meanwhile my 2017 Gasser's air filter was soaked at the bottom 3 inches.  Curious, very curious...

- Hello everyone, new member here...

  I've joined on behalf of my father, who is a proud owner of his second Touareg after having a Turbo Cayenne for several years and loving the model. He's 80 and not so good on the old interwebz

  This past week, there was a terrible summer thunderstorm in Charlotte. He stopped at a strip mall, left the car running for 20-25 minutes and made some calls until the storm blew over. Once it passed, he continued on his way. Approximately 1/4 mile down the road, the car basically just slowed and then stopped without warning. Thankfully a police officer came by pretty quickly and kept the situation safe as he had not been able to get off the road. They had the car flat-bedded to the dealer where he purchased it and where it had been serviced less than a week previously, was told to get a rental (on them), and they would take a look.

  The following day, the service writer called him and told him that the car had been in deep water and that they would not honor the warranty. They explained that they were not responsible and that they would no longer be covering the rental--basically, call you insurance company, they'll handle it.

  A call to the insurance company brought more bad news---we don't cover that, the dealer should cover it, and good luck.

  So...this issue of water ingestion is the obvious cause, but VW is taking no responsibility for the design flaw, and are not acknowledging the recalls mentioned in previous posts in Germany or in China. I wonder if the OP or Kettlekamp have had any luck with getting VW of NA to do anything about this?

  Has anyone who has reached out to the NHTSA through their problem reporting site, and if so, any response from them regarding the issue?

  Thanks for any responses...

- Hi –

  I am currently going through the same situation, except my car was in my driveway over night in a really bad rain storm. I got in the car the morning after the storm, heard a weird noise, pulled out of driveway and didn't go far when the car starting bucking, smoking, lost power and car died. Had to have car towed to service at dealership.

15

Spoke to service manager this morning and he accused me of driving through water and will have to pay for any damages. I said "Hell NO".

Will keep you posted!

- I would like to start out and thank everyone who posts on this forum! I would not have even thought to look at something like this. I'm new to the Touareg scene, but not new to VW diesels. I purchased my 2016 VW TDI LUX late last year. It sat on the dealer's lot for approx. 2 years waiting for the fix. It now has 3600 miles on the odometer, and I have the same problem with water entering into the air box.

- Update... my 2017 Touareg ingested water. According to the dealer it was driven in a flood. My account is that I did about 8 hours of highway (70-80 mph) driving through rain, it was heavy at times. Then driven back home, another 2 days of highway driving. Then the vehicle sat for a week. When it did not start on my return it was towed to the dealer that sold it. The mechanic stated that the air filter was full of water and acorns. Funny that all that water did not drain during while it sat for a week. Long story made short, my insurance cover the cost of the new engine, but now I'm concerned that the same thing can happen again. Keep checking the air filter after it rains!!!!!

39.     Despite these complaints and the China Recall, Defendants have yet to issue a recall or even inform owners and lessors in the United States of the Drain Valve Defect and its safety risk.  Defendants' deceptive acts, misrepresentations and omissions regarding the Drain Valve Defect create a safety risk for drivers and occupants of the Class Vehicles and members of the public who may be involved in accidents with Class Vehicles that experience engine failure due to the Drain Valve Defect while they are being driven.  When the drain valves in the Class Vehicles' fail, the engines in the Class Vehicles can ingest water and suffer a catastrophic engine failure causing the vehicle to lose power, brakes, and power steering while driving in traffic, thereby increasing the risk of rear-end collisions and other accidents.  The reasonable expectation that the Class Vehicles are safe and reliable to drive (and ride in) is and was material to Plaintiffs and Class members at all relevant times.

40.     Notwithstanding Defendants' exclusive and superior knowledge of the Drain

Valve Defect, Defendants failed to disclose the defect to consumers at the time of purchase or

lease of the Class Vehicles (or at any time thereafter) and continued to sell Class Vehicles

containing the defect through the 2017 model year.  Defendants have intentionally concealed

that the Class Vehicles' air intake system, drain valves and/or engines are defective, prone to

premature failure, and present a safety risk rather than disclosing this risk to consumers,

including Plaintiffs and Class members, and the public.

**Despite Express Warranties, Volkswagen Has Not Fixed The Drain Valve Defect**

41.     Furthermore, Defendants provide an express "New Vehicle Limited Warranty"

in connection with the sale (by purchase or lease) of each Class Vehicles (the "Limited

Warranty").  In the Limited Warranty, Defendants promise to repair any defect or malfunction

that arises in the vehicle during a defined period of time.  The Limited Warranty is provided

by Defendants to the vehicle owner in writing and regardless of what state the customer

purchased his or her vehicle in.  The relevant terms of the Limited Warranty are substantially

similar regardless of the model year.

42.     Each Plaintiff was provided with a Limited Warranty and it was a basis of their

purchase of their vehicles.

43.     In its Limited Warranty and in advertisements, brochures, and through other

statements in the media, Defendants expressly warranted that it would repair or replace defects

in material or workmanship free of charge if they became apparent during the warranty period.

The following language for the Limited Warranty appears in the USA Warranty and

Maintenance Guide for the Class Vehicles:

> This limited warranty covers any repair to correct a defect in
> manufacturer's material or workmanship (i.e., mechanical defects),
> exception wheel alignment, tire balance, and the repair or
> replacement of tires.

44.     The duration of the Limited Warranty is "3 years or 36,000 miles, whichever occurs first." According to the terms of the Limited Warranty, the warranty period "begins on the date the vehicle is delivered to either the original purchaser or the original lessee." This language concerning the commencement of the Limited Warranty period is substantially similar for all Class Vehicles.

45.     Defendants also provide an express "Powertrain Limited Warranty" in connection with the sale (by purchase or lease) of each Class Vehicles (the "Powertrain Warranty"). In the Powertrain Warranty, Defendants promise to repair any defect or malfunction that arises in the vehicle during a defined period of time. The Powertrain Warranty is provided by Defendants to the vehicle owner in writing and regardless of what state the customer purchased his or her vehicle in. The relevant terms of the Powertrain Warranty are substantially similar regardless of the model year.

46.     Each Plaintiff was provided with a Powertrain Warranty and it was a basis of their purchase of their vehicles.

47.     In its Powertrain Warranty and in advertisements, brochures, and through other statements in the media, Defendants expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. The following language for the Powertrain Warranty appears in the USA Warranty and Maintenance Guide for the Class Vehicles:

> The Powertrain Limited Warranty covers any repair to correct a defect in manufacturer's material or workmanship for the following Volkswagen parts and components:
>
> **Engine**

Cylinder block and all internal parts, cylinder head and all internal parts, valve train, spur belt, flywheel, oil pump, water pump, manifolds, all related seals and gaskets.

…

48. The duration of the Powertrain Warranty is "10 years or 100,000 miles, whichever occurs first, from the date the vehicle was first placed in service." According to the terms of the Limited Warranty, the warranty period "begins on the date the vehicle is delivered to either the original purchaser or the original lessee." This language concerning the commencement of the Powertrain Warranty period is substantially similar for all Class Vehicles.

49. The air intake system on the Class Vehicles – including the faulty drain valves – are part of the "Engine" and are thereby covered by the Powertrain Warranty for the Class Vehicles. Moreover, the Drain Valve Defect can cause damage to the Class Vehicles' engines, including their "[c]ylinder block[s] and all internal parts" and their "cylinder head[s] and all internal parts."

50. Despite actual and constructive knowledge of Class Vehicle defects as described in this complaint, Defendants failed to cure Class Vehicle defects within the express warranty period and thereby breached the terms of the express warranty.

51. Through no fault of their own, Plaintiffs and Class members did not possess sufficient technical expertise to recognize symptoms of impending Drain Valve Defect manifestation. This information, however, was well known to Defendants, but not revealed.

52. Plaintiffs and Class members relied upon material misrepresentations, fraudulent statements and/or material omissions of employees and agents of Defendants at the time of purchase or lease, including but not limited to the useful and expected life of Class

19

Vehicles and the recommended Class Vehicle maintenance program.

53.     Defendants' misrepresentations and fraudulent statements were received by Plaintiffs and Class members prior to and at the point of their purchase or lease of a Class Vehicle, including misrepresentations and omissions in the owner's manual and the USA Warranty and Maintenance manuals.  The representations created a reasonable belief that the useful life expectancy of Class Vehicles without a major engine failure was in excess of 150,000 miles.  These representations reveal that the air intake system was a non-maintenance engine component not subject to inspection at pre-determined intervals.  The only components of the air intake system in the Class Vehicles that are subject to maintenance – let alone a visual inspection – at pre-determined intervals are the "air filter element and snow screen," which are scheduled to be replaced every 60,000 miles.[8]  Prior to this 60,000-mile service, owners and VW dealers would have no reason to inspect the air intake systems, drain valves, or air filters of the Class Vehicles.

54.     Plaintiffs' and Class members' Class Vehicles all contained the Drain Valve Defect within the warranty period.  However, despite the existence of the express warranties provided to Plaintiffs and Class members, Defendants have failed to honor the terms of the warranties by failing to "repair the defective part or replace it with a new or remanufactured genuine Volkswagen part" "free of charge."

## TOLLING OF THE STATUTE OF LIMITATIONS

55.     Any applicable statute of limitations has been tolled by Defendants' knowing and active concealment of the Drain Valve Defect and the misrepresentations and omissions

---

[8] Pursuant to Defendants' maintenance schedules, even authorized VW dealers may not discover evidence of the Drain Valve Defect (such as a water-damaged air filter) until the 60,000-mile mark, at which point the Class Vehicles' air filters are directed to be changed for the first time.

alleged herein.  Through no fault or lack of diligence, Plaintiffs and Class members were

deceived regarding the Drain Valve Defect and could not reasonably discover the latent nature

of the defect.

56.     Plaintiffs and Class members could not reasonably discover Defendants'

deception with respect to the Drain Valve Defect in the Class Vehicles prior to experiencing a

failure and/or being informed of the reason for the failure.  Within the time period of any

applicable statutes of limitations, Plaintiffs and Class members could not have discovered

through the exercise of reasonable diligence that Defendants were concealing the Drain Valve

Defect.

57.     Plaintiffs and Class members did not discover and did not know of any facts

that would have caused a reasonable person to suspect that Defendants were concealing a

latent defect and/or that the Class Vehicles contained defective drain valves and/or engines

prone to premature failure or safety risk.  As alleged herein, the existence of the Drain Valve

Defect and safety risk were material to Plaintiffs and Class members at all relevant times.

58.     At all times, Defendants are and were under a continuous duty to disclose to

Plaintiffs and Class members the true standard, quality, and grade of the Class Vehicles and to

disclose the Drain Valve Defect and potential safety risk associated with the premature failure

of the drain valves and/or engines.

59.     Defendants knowingly, actively and affirmatively concealed the facts alleged

herein including the Drain Valve Defect.  Plaintiffs and Class members reasonably relied on

Defendants' knowing, active, and affirmative concealment.

60.     For these reasons, all applicable statutes of limitation have been tolled based on

the discovery rule and Defendants' fraudulent concealment and Defendants are estopped from

relying on any statutes of limitations in defense of this action.

## CLASS ACTION ALLEGATIONS

61.     Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a)

and 23(b)(1), (b)(2) and/or (b)(3) on behalf of the following Class and Subclasses:

> All persons or entities in the United States that purchased, leased, or
> own a VW Touareg manufactured between December 2014 and
> November 2017 (the "Nationwide Class" or "Class");

> All persons or entities in New Jersey that purchased, leased, or own
> a VW Touareg manufactured between December 2014 and
> November 2017 (the "New Jersey Subclass"); and

> All persons or entities in Texas that purchased, leased, or own a VW
> Touareg manufactured between December 2014 and November
> 2017 (the "Texas Subclass") (collectively, the "Classes").

62.     Subject to additional information obtained through further investigation and

discovery, the foregoing definition of the Classes may be expanded or narrowed by an

amended complaint, or narrowed at class certification

63.     Specifically excluded from the Classes are Defendants, Defendants' officers,

directors, agents, trustees, parents, children, corporations, trusts, representatives, employees,

principals, servants, partners, joint ventures, or entities controlled by Defendants, and their

heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants

and/or Defendants' officers and/or directors, the judge assigned to this action, and any member

of the judge's immediate family.

64.     **Numerosity.**  The members of the proposed Classes are geographically

dispersed throughout the United States and are so numerous that individual joinder is

impracticable.  Upon information and belief, Plaintiffs reasonably estimate that there are tens

of thousands of individuals that are members of the proposed Classes.  Although the precise

22

number of proposed members is unknown to Plaintiffs, the true number of Class members is known by Defendants. More specifically, VW USA and its network of authorized dealers, maintains databases that contain the following information: (i) the name of each Class member that leased or purchased a vehicle; and (ii) the address of each Class member. Thus, Class members may be identified and notified of the pendency of this action by first class mail, electronic mail, and/or published notice, as is customarily done in consumer class actions.

65. **Existence and predominance of common questions of law and fact.** Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a) Whether the drain valves and/or engines installed in the Class Vehicles are prone to premature failure;

(b) Whether the drain valves and/or engines installed in the Class Vehicles contain a design defect and/or a defect in material, manufacturing and/or workmanship;

(c) Whether the drain valves and/or engines installed in the Class Vehicles present a safety risk;

(d) Whether Defendants knew or should have known that the drain valves and/or engines installed in the Class Vehicles are defective and/or prone to premature failure and present a safety risk;

(e) Whether Defendants had a duty to disclose that the drain valves and/or engines installed in the Class Vehicles are defective and/or prone to premature failure and present a safety risk;

(f) Whether Defendants breached their duty to disclose that the drain valves and/or engines installed in the Class Vehicles are defective and/or prone to premature

failure and present a safety risk;

(g)     Whether Defendants intentionally and knowingly falsely misrepresented, concealed, suppressed and/or omitted material facts including the fact that the drain valves and/or engines installed in the Class Vehicles are defective and/or prone to premature failure and present a safety risk;

(h)     Whether Defendants negligently falsely misrepresented or omitted material facts including the fact that the drain valves and/or engines installed in the Class Vehicles are defective and/or prone to premature failure and present a safety risk;

(i)     Whether Defendants made material misrepresentations and/or omissions concerning the standard, quality, or grade of the Class Vehicles and the Drain Valve Defect;

(j)     Whether Class members would pay less for a Class Vehicle if Defendants, at the time of purchase or lease, disclosed that the drain valves and/or engines were defective and/or prone to premature failure during the useful life of the engines;

(k)     Whether Defendants are liable to Plaintiffs and Class members for breaching their express and/or implied warranties;

(l)     Whether Defendants are liable to Plaintiffs and Class members for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* and/or any other statutory duties under state laws;

(m)     Whether Defendants are liable to Plaintiffs and Class members for unjust enrichment;

(n)     Whether Defendants actively concealed material facts from Plaintiffs and Class

members in order to, *inter alia*, sell more Class Vehicles and/or transfer the costs

associated with repair or replacement of the drain valves and/or engines to

Plaintiffs and Class members; and

(o)     Whether Plaintiffs and Class members are entitled to damages, restitution,

equitable, injunctive, compulsory, or other relief

66.     **Typicality.**  Plaintiffs' claims are typical of the claims of the other Class

members in that Plaintiffs sustained damages arising out of the same illegal actions and

conduct by Defendants.

67.     **Adequacy of Representation.**  Plaintiffs will fairly and adequately protect the

interests of Class members.  Plaintiffs have retained counsel that is highly experienced in

complex consumer class action litigation, and Plaintiffs intend to vigorously prosecute this

action on behalf of the Classes.  Furthermore, Plaintiffs have no interests that are antagonistic

to those of the Classes.

68.     **Superiority.**  A class action is superior to all other available means for the fair

and efficient adjudication of this controversy.  The damages or other financial detriment

suffered by Class members is relatively small compared to the burden and expense of

individual litigation of their claims against Defendants.  It would, thus, be virtually impossible

for Class members, on an individual basis, to obtain effective redress for the wrongs

committed against them.  Furthermore, even if Class members could afford such

individualized litigation, the court system could not.  Individualized litigation would create the

danger of inconsistent or contradictory judgments arising from the same set of facts.

Individualized litigation would also increase the delay and expense to all parties and the court

system from the issues raised by this action.  By contrast, the class action device provides the

benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances.

69.     In the alternative, the Class and Subclasses may also be certified because:

(a)     the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for the Defendants;

(b)     the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other members of the Classes not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and/or

(c)     Defendants have acted or refused to act on grounds generally applicable to the Class and Subclasses whole, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Classes as a whole.

## CLAIMS FOR RELIEF

### COUNT I
### Breach Of Express Warranty

70.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

71.     Plaintiffs brings this count on behalf of themselves and members of the Class and Subclasses.

72.     Defendants are and were at all relevant times merchants and sellers of motor

vehicles as defined under the Uniform Commercial Code.

73.     With respect to leases, Defendants are and were at all relevant times lessors of motor vehicles as defined under the Uniform Commercial Code.

74.     The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

75.     In connection with the purchase or lease of each of the Class Vehicles, Defendants provide warranty coverage for the Class Vehicles under one or more manufacturer's warranties.  Defendants provide: (1) the Limited Warranty, which "covers any repair to correct a defect in manufacturer's material or workmanship (i.e., mechanical defects)" for 3 years or 36,000 miles, and (2) the Powertrain Warranty, which "covers any repair to correct a defect in manufacturer's material or workmanship for the … [c]ylinder block and all internal parts, cylinder head and all internal parts, valve train, spur belt, flywheel, oil pump, water pump, manifolds, all related seals and gaskets" for 10 years or 100,000 miles. Under the warranties provided to Plaintiffs and Class members, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the drain valves and/or engines, at no cost to owners and lessors of the Class Vehicles.

76.     Defendants also marketed the Class Vehicles as safe, built to last, and reliable vehicles.

77.     Defendants' warranties, as well as advertisements, brochures, and other statements in the media regarding the Class Vehicles formed a basis of the bargain that was reached when Plaintiffs and Class members purchased or leased their Class Vehicles.

78.     Plaintiffs and Class members experienced the existence of the Drain Valve

Defect within the warranty periods but had no knowledge of the existence of the defect, which was known and concealed by Defendants.  Despite the existence of the warranties, Defendants failed to inform Plaintiffs and Class members that the Class Vehicles contained the Drain Valve Defect.

79.     Because of the Drain Valve Defect, the Class Vehicles are not reliable and owners of these vehicles have lost confidence in the ability of the Class Vehicles to perform the function of safe and reliable transportation.

80.     Plaintiffs and Class members could not have reasonably discovered the Drain Valve Defect prior to failure.

81.     The Class Vehicles were not of merchantable quality and were unfit for the ordinary purposes for which passenger vehicles are used because of engine materials, workmanship, design and manufacture defects which cause engine failure and/or failure to perform as warranted.  The Class Vehicles were not fully operational, safe, or reliable (and remained so even though Defendants were on notice of the Drain Valve Defect), nor did they comply with the warranties expressly made to purchasers or lessees.  Defendants did not provide at the time of sale, and have not provided since then, Class Vehicles conforming to these express warranties.

82.     Defendants further breached their express warranties by selling and leasing Class Vehicles that were defective with respect to engine materials, workmanship, design and manufacture, and were accompanied by an owner's manual and/or warranty and maintenance pamphlet that incorporated no inspection and service intervals for the Drain Valve Defect even though Defendants knew these components were defective and required periodic inspection and service.

83.     Further, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and Class members whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time.

84.     Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Defendants wrongfully and fraudulently mispresented and/or concealed material facts regarding the Class Vehicles.  Plaintiffs and Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

85.     Finally, because of Defendants' breach of express warranty as set forth herein, Plaintiffs and Class members assert, as additional and/or alternative remedies, the revocation of acceptance of the goods and the return to Plaintiffs and Class members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

86.     As a direct and proximate result of Defendants' breach of express warranties, Plaintiffs and Class members have been damaged in an amount to be determined at trial.

## COUNT II
### Breach Of Implied Warranty

87.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

88.     Plaintiffs bring this count on behalf of themselves and members of the Class and Subclasses.

89.     Plaintiffs and Class members purchased or leased the Class Vehicles from

Defendants by and through Defendants' authorized agents for retail sales, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party. At all relevant times, Defendants were the manufacturers, distributors, warrantors, and/or sellers of Class Vehicles.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased.

90.    Defendants are and were at all relevant times merchants and sellers of motor vehicles as defined under the Uniform Commercial Code.

91.    With respect to leases, Defendants are and were at all relevant times lessors of motor vehicles as defined under the Uniform Commercial Code.

92.    The Class Vehicles are and were at all relevant times goods within the meaning of the Uniform Commercial Code.

93.    Defendants impliedly warranted that the Class Vehicles were in merchantable condition and fit for the ordinary purpose of providing safe and reliable transportation.

94.    The Class Vehicles, when sold or leased and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose of providing safe and reliable transportation.  The Class Vehicles contain an inherently defective drain valves and/or engines (at the time of sale or lease and thereafter) and present an undisclosed safety risk to drivers and occupants due to the Drain Valve Defect.  Thus, Defendants breached their implied warranty of merchantability.

95.    Defendants knew that the Class Vehicles were inherently defective and did not conform to their warranties, and Defendants wrongfully and fraudulently mispresented and/or concealed material facts regarding the Class Vehicles.  Plaintiffs and Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent

pretenses.

96.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and members of the Classes have been damaged in an amount to be proven at trial.

**COUNT III**

**Violation Of The Magnuson-Moss Warranty Act ("MMWA")**

97.     Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

98.     Plaintiffs bring this count on behalf of themselves and members of the Class.

99.     Plaintiffs and Class members are "consumers" within the meaning of the MMWA, 15 U.S.C. § 2301(3).

100.    Defendants are "supplier[s]" and "warrantor[s]" within the meaning of the MMWA, 15 U.S.C. § 2301(4)-(5).

101.    The Class Vehicles are "consumer products" within the meaning of the MMWA, 15 U.S.C. § 2301(1).

102.    The MMWA provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.  *See* 15 U.S.C. § 2310(d)(1).

103.    Defendants provided Plaintiffs and Class members with one or more express warranties, which are covered under 15 U.S.C. § 2301(6).  Defendants provide: (1) the Limited Warranty, which "covers any repair to correct a defect in manufacturer's material or workmanship (i.e., mechanical defects)" for 3 years or 36,000 miles, and (2) the Powertrain Warranty, which "covers any repair to correct a defect in manufacturer's material or workmanship for the … [c]ylinder block and all internal parts, cylinder head and all internal

parts, valve train, spur belt, flywheel, oil pump, water pump, manifolds, all related seals and gaskets" for 10 years or 100,000 miles. Under the warranties provided to Plaintiffs and Class members, Defendants promised to repair or replace covered defective engine components arising out of defects in materials and/or workmanship, including the drain valves and/or engines, at no cost to owners and lessors of the Class Vehicles.

104.    Defendants' express warranties are written warranties within the meaning of the MMWA, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

105.    Defendants breached these warranties as described in more detail above. Without limitation, Defendants the standard, quality or grade of the Class Vehicles and failing to disclose and fraudulently concealing the existence of the Drain Valve Defect. Without limitation, the Class Vehicles share a common defect in design, material, manufacturing and/or workmanship that is prone to premature failure and fails to operate as represented by Defendants due to the Drain Valve Defect. As the China Recall indicates, the Class Vehicles are not of the standard, quality or grade that Defendants represented at the time of purchase or lease and contain the Drain Valve Defect.

106.    Plaintiffs and Class members have had sufficient direct dealings with Defendants or their agents (dealerships) to establish privity of contract between Defendants, on the one hand, and Plaintiffs and Class members, on the other hand. Nonetheless, privity is not required here because Plaintiffs and each Class member are intended third-party beneficiaries of contracts between Defendants and their dealers, and specifically, of their implied warranties. The dealers were not intended to be the ultimate users of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles;

the warranty agreements were designed for and intended to benefit purchasers and lessors of the Class Vehicles only.

107.    Affording Defendants a reasonable opportunity to cure their breach of written warranties would be unnecessary and futile.  At the time of sale or lease of each Class Vehicle and all relevant times thereafter, Defendants knew or should have known of the material misrepresentations and omissions concerning the standard, quality or grade of the Class Vehicles and the existence of the Drain Valve Defect, but failed to repair or replace the drain valves and/or engines.  Likewise, Defendants failed to disclose the Drain Valve Defect.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure and/or afford Defendants a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

108.    Plaintiffs and Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them to Defendants.  Thus, Plaintiffs and Class members have not re-accepted their Class Vehicles by retaining them.

109.    The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25.  The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

110.    Plaintiffs, individually and on behalf of Class members, seek all damages permitted by law, including diminution in the value of the Class Vehicles, in an amount to be proven at trial.

## COUNT IV
### Unjust Enrichment

111.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

112.    Plaintiffs bring this count on behalf of themselves and the members of the Class and Subclasses.

113.    Plaintiffs and members of the Classes conferred a benefit on Defendants by leasing or purchasing the Class Vehicles.  Defendants were and should have been reasonably expected to provide Class Vehicles free from the Drain Valve Defect.

114.    Defendants unjustly profited from the lease and sale of the Class Vehicles at inflated prices as a result of their false representations, omissions and concealment of the Drain Valve Defect in the Class Vehicles.

115.    As a proximate result of Defendants' false representations, omissions and concealment of the Drain Valve Defect in the Class Vehicles, and as a result of Defendants' ill-gotten gains, benefits and profits, Defendants have been unjustly enriched at the expense of Plaintiffs and members of the Classes.  It would be inequitable for Defendants to retain their ill-gotten profits without paying the value thereof to Plaintiffs and members of the Classes.

116.    Plaintiffs and members of the Classes are entitled to restitution in the amount of Defendants' ill-gotten gains, benefits and profits, including interest, resulting from their unlawful, unjust and inequitable conduct.

117.    Plaintiffs and members of the Classes seek an order requiring Defendants' to disgorge their gains and profits to Plaintiffs and members of the Classes, together with interest, in a manner to be determined by the Court.

## COUNT V
### Violation Of The New Jersey Consumer Fraud Act ("NJCFA")

118.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

119.    Plaintiff Crandell brings this claim on behalf of herself and the members of the Class and New Jersey Subclass.

120.    The NJCFA prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice … ."  N.J.S.A. § 56:8-2.

121.    Plaintiff Crandell and members of the Class and New Jersey Subclass are consumers who purchased or leased Class Vehicles for personal, family, or household use.

122.    In violation of the NJCFA, Defendants employed unconscionable commercial practices, deception, fraud, false pretense and/or false promise by providing Class Vehicles that contain the Drain Valve Defect and present an undisclosed safety risk to drivers and occupants of the Class Vehicles.  Further, Defendants misrepresented the standard, quality or grade of the Class Vehicles which were sold or leased with the latent defect and failed to disclose the Drain Valve Defect and corresponding safety risk in violation of the NJCFA.

123.    Defendants' misrepresentations and fraudulent omissions were material to Plaintiff Crandell and members of the Class and New Jersey Subclass.  When Plaintiff Crandell and members of the Class and New Jersey Subclass purchased or leased their Class

Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' drain valves and/or engine would last beyond the warranty periods without need for repair or replacement and/or would not pose an unavoidable safety risk.  Had Defendants disclosed that the drain valves and/or engines were prone to premature failure and/or an unavoidable safety risk, Plaintiff Crandell and members of the Class and New Jersey Subclass would not have purchased or leased the Class Vehicles or would they have paid less for them.

124.    Defendants knowingly concealed, suppressed and/or omitted the existence of the Drain Valve Defect and safety risk in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.  Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to avoid the cost of a recall and maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

125.    Defendants owed a duty to disclose the Drain Valve Defect and its corresponding safety risk to Plaintiff Crandell and members of the Class and New Jersey Subclass members because Defendants possessed superior and exclusive knowledge regarding the defect and the risks associated with the drain valves and/or engine failure.  Rather than disclose the Drain Valve Defect, Defendants intentionally concealed the defect with the intent to mislead Plaintiff Crandell and members of the Class and New Jersey Subclass in order to sell additional Class Vehicles and avoid the cost of a recall.

126.    Defendants knew, or should have known, that the Drain Valve Defect in the Class Vehicles could cause catastrophic engine failure leading safety risks due to a loss of engine power while the vehicle was operating.  Further, Defendants knew, or should have known, such loss of power could cause the Class Vehicles to become involved in rear-end

36

collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury.

127.    Had Plaintiff Crandell and members of the Class and New Jersey Subclass known about the Drain Valve Defect at the time of purchase, including the safety hazard posed by the defect, they would not have bought the Class Vehicles or would have paid much less for them.

128.    As a direct and proximate result of Defendants' wrongful conduct in violation of the NJCFA, Plaintiff Crandell and members of the Class and New Jersey Subclass members have suffered and continue to suffer harm by the threat of sudden and unexpected engine failure due to the Drain Valve Defect and/or actual damages in the amount of the cost to replace the drain valves and/or engines, and damages to be determined at trial.  Plaintiff Crandell and members of the Class and New Jersey Subclass have also suffered the ascertainable loss of the diminished value of their vehicles.

129.    As a result of Defendants' fraudulent and/or deceptive conduct, misrepresentations and/or knowing omissions, Plaintiff Crandell and members of the Class and New Jersey Subclass are entitled to actual damages, treble damages, costs, attorneys' fees, and other damages to be determined at trial.  *See* N.J.S.A. § 56:8-19.

130.    Plaintiff Crandell and members of the Class and New Jersey Subclass also seek an order enjoining Defendants' unlawful, fraudulent and/or deceptive practices, and any other just and proper declaratory or equitable relief available under the NJCFA.  *See* N.J.S.A. § 56:8-19.

<u>COUNT VI</u>
**Violation Of The Texas Deceptive Trade Practices Consumer Protection Act ("DTPA")**

131.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

132.    Plaintiff Ontiveros brings this claim on behalf of himself and Texas Subclass members.

133.    The DTPA prohibits Defendants from "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have …" Tex. Bus. & Com. Code Ann. § 17.46(b)(5).

134.    Plaintiff Ontiveros and Texas Subclass members are consumers who purchased or leased Class Vehicles for personal, family, or household use.

135.    In violation of the DTPA, Defendants employed unconscionable commercial practices, deception, fraud, false pretense and/or false promise by providing Class Vehicles that contain the Drain Valve Defect and present an undisclosed safety risk to drivers and occupants of the Class Vehicles.  Further, Defendants misrepresented the standard, quality or grade of the Class Vehicles which were sold or leased with the latent defect and failed to disclose the Drain Valve Defect and corresponding safety risk in violation of the DTPA.

136.    Defendants' misrepresentations and fraudulent omissions were material to Plaintiff Ontiveros and Texas Subclass members.  When Plaintiff Ontiveros and Texas Subclass members purchased or leased their Class Vehicles, they reasonably relied on the reasonable expectation that the Class Vehicles' drain valves and/or engines would last beyond the warranty periods without need for repair or replacement and/or would not pose an unavoidable safety risk.

137.    Defendants knowingly concealed, suppressed and/or omitted the existence of

the Drain Valve Defect and associated safety risks in the Class Vehicles at the time of sale or lease and at all relevant times thereafter.  Further, Defendants unconscionably marketed the Class Vehicles to uninformed consumers in order to avoid the cost of a recall and maximize profits by selling additional Class Vehicles containing the undisclosed latent defect and corresponding safety risk.

138.   Defendants owed a duty to disclose the Drain Valve Defect and its corresponding safety risk to Plaintiff Ontiveros and Texas Subclass members because Defendants possessed superior and exclusive knowledge regarding the defect and the risks associated with the drain valves and/or engine failure.  Rather than disclose the Drain Valve Defect, Defendants intentionally concealed the defect with the intent to mislead Plaintiff Ontiveros and Texas Subclass members in order to sell additional Class Vehicles and avoid the cost of a recall.

139.   Defendants knew, or should have known, that the Drain Valve Defect in the Class Vehicles could cause catastrophic engine failure leading to a loss of engine power while the vehicle was operating.  Further, Defendants knew, or should have known, such loss of power could cause the Class Vehicles to become involved in rear-end collisions or other accidents, putting vehicle operators, passengers, and other motorists at risk for injury.

140.   Had Plaintiff Ontiveros and Texas Subclass members known about the Drain Valve Defect at the time of purchase, including the safety hazard posed by the defect and the monetary cost of repair, they would not have bought the Class Vehicles or would have paid less for them.

141.   As a direct and proximate result of Defendants' wrongful conduct in violation of the DTPA, Plaintiff Ontiveros and Texas Subclass members have suffered and continue to

suffer harm by the threat of sudden and unexpected Drain Valve Defect and/or actual damages in the amount of the cost to replace the drain valves and/or engines, and damages to be determined at trial.  Plaintiff Ontiveros and Texas Subclass members have also suffered the ascertainable loss of the diminished value of their vehicles.

142.    As a result of Defendants' fraudulent and/or deceptive conduct, misrepresentations and/or knowing omissions, Plaintiff Ontiveros and Texas Subclass members are entitled to actual damages, treble damages, and other damages to be determined at trial.  *See* Tex. Bus. & Com. Code Ann. § 17.50(b)(1).

143.    Plaintiff Ontiveros and Texas Subclass members also seek an order enjoining Defendants' unlawful, fraudulent and/or deceptive practices, and any other just and proper declaratory or equitable relief available under the DTPA.  *See* Tex. Bus. & Com. Code Ann. § 17.50(b)(2).

<u>**COUNT VII**</u>
**Violation Of The Virginia Consumer Protection Act ("VCPA")**

144.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set forth herein.

145.    Plaintiffs bring this Count on behalf of the Class.

146.    The Virginia Consumer Protection prohibits "(5) misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits; (6) misrepresenting that goods or services are of a particular standard, quality, grade, style, or model; … (8) advertising goods or services with intent not to sell them as advertised …; [and] (14) using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]"  Va. Code Ann. § 59.1-200(A).

147.    Each Defendant is a "person" as defined by Va. Code Ann. § 59.1-198.  The

transactions between Plaintiffs and Class members on one hand and Defendants on the other, leading to the purchase or lease of the Class Vehicles by Plaintiffs and Class members, are "consumer transactions" as defined by Va. Code Ann. § 59.1-198, because the Class Vehicles were purchased or leased primarily for personal, family or household purposes.

148.     In the course of their business, Defendants willfully failed to disclose and actively concealed the dangerous risk of the Drain Valve Defect in Class Vehicles as described above.

149.     Accordingly, Defendants have engaged in acts and practices violating Va. Code Ann. § 59.1-200(A), including representing that Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Class Vehicles are of a particular standard and quality when they are not; advertising Class Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

150.     Defendants' actions as set forth above occurred in the conduct of trade or commerce.

151.     Defendants' conduct proximately caused injuries to Plaintiffs and Class members.

152.     Plaintiffs and Class members were injured as a result of Defendants conduct in that Plaintiffs and Class members overpaid for their Class Vehicles and did not receive the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

153.     Defendants actively and willfully concealed and/or suppressed the material facts regarding the defective and unreasonably dangerous nature of the Drain Valve Defect in

41

the Class Vehicles, in whole or in part, with the intent to deceive and mislead Plaintiffs and

Class members and to induce Plaintiffs and Class members to purchase or lease Class Vehicles

at a higher price, which did not match the Class Vehicles' true value.  Plaintiffs and Class

members therefore seek treble damages.

**COUNT VIII**
**Fraud**

154.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set

forth herein.

155.    Plaintiffs bring this count on behalf of themselves and members of the Class

and Subclasses.

156.    Defendants intentionally and knowingly falsely misrepresented, concealed,

suppressed and/or omitted material facts including the standard, quality or grade of the Class

Vehicles and the fact that the drain valves and/or engines installed in the Class Vehicles are

defective and prone to premature failure, exposing drivers, occupants and members of the

public to safety risks with the intent that Plaintiffs and Class members rely on Defendants'

misrepresentations and omissions.  As a direct result of Defendants' fraudulent conduct,

Plaintiffs and Class members have suffered actual damages.

157.    The fact that the drain valves and/or engines installed in the Class Vehicles are

defective and prone to premature failure is material because it presents a safety risk and places

the driver and occupants at risk of serious injury or death.  When the drain valves and/or

engines fails, drivers may lose the ability to accelerate, maintain speed, stop, or steer.  Drivers

and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused

by the inability to maintain an appropriate speed, and the general public is also at risk for

being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain

42

an appropriate speed.  Plaintiffs and Class members would not have purchased the Class

Vehicles but for Defendants' omissions and concealment of material facts regarding the nature

and quality of the Class Vehicles and the existence of the Drain Valve Defect or would have

paid less for the Class Vehicles.

158.    Defendants knew their false misrepresentation, concealment and suppression of

material facts was false and misleading and knew the effect of concealing those material facts.

Defendants knew their concealment and suppression of the Drain Valve Defect would sell

more Class Vehicles and would discourage Plaintiffs and Class members from seeking

replacement or repair of the drain valves and/or engines, thereby increasing profits.

159.    Defendants acted with malice, oppression and fraud.

160.    Plaintiffs and Class members reasonably relied upon Defendants' knowing,

affirmative and active false representations, concealment and omissions.  As a direct and

proximate result of Defendants' false representations, omissions and active concealment of

material facts regarding the Drain Valve Defect, Plaintiffs and Class members have suffered

actual damages in an amount to be determined at trial.

## COUNT IX
### Negligent Misrepresentation

161.    Plaintiffs incorporate and reallege each preceding paragraph as though fully set

forth herein.

162.    Plaintiffs brings this count on behalf of themselves and members of the Class

and Subclasses.

163.    Defendants owed a duty to disclose the Drain Valve Defect and the

corresponding safety risk to Plaintiffs and Class members because Defendants possessed

superior and exclusive knowledge regarding the defect and the risks associated with the drain

valves and/or engine failure.

164.    Defendants marketed the Class Vehicles as safe, built to last, and reliable vehicles.

165.    Defendants negligently misrepresented and omitted material facts including the standard, quality or grade of the Class Vehicles and the fact that the drain valves and/or engine installed in the Class Vehicles are defective and prone to premature failure, exposing drivers, occupants and members of the public to safety risks.  As a direct result of Defendants' negligent conduct, Plaintiffs and Class members have suffered actual damages.

166.    As a result of Defendants' failure to disclose, in owners' manuals, maintenance schedules or elsewhere, to Plaintiffs and Class members the material fact that the drain valves and/or engines installed in the Class Vehicles are defective and prone to premature failure, owners and lessors of the Class Vehicles are required to spend thousands of dollars to repair or replace the drain valves, engines, and/or other parts, or sell their vehicles at a substantial loss. The fact that the drain valves and/or engines installed in the Class Vehicles are prone to premature failure is material because it presents a safety risk and places the driver and occupants at risk of serious injury or death.  When the drain valve and/or engine fails, drivers may be unable to accelerate or maintain speed or may experience catastrophic engine failure. Drivers and occupants of the Class Vehicles are at risk for rear-end collisions or other accidents caused by the inability to maintain an appropriate speed, and the general public is also at risk for being involved in an accident with a Class Vehicle that suddenly stops or is unable to maintain an appropriate speed.  Plaintiffs and Class members would not have purchased the Class Vehicles but for Defendants' negligent misrepresentations and omissions of material facts regarding the nature and quality of the Class Vehicles and existence of the

Drain Valve Defect or would have paid less for the Class Vehicles.

167.    Plaintiffs and Class members justifiably relied upon Defendants' negligent false representations and omissions of material facts.  As a direct and proximate result of Defendants' negligent representations and omissions of material facts regarding the standard, quality or grade of the Class Vehicles and/or the Drain Valve Defect, Plaintiffs and Class members have suffered an ascertainable loss and actual damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, respectfully requests that this Court enter judgment against Defendants and in favor of Plaintiffs and the Class and Subclasses, and award the following relief:

A.    An order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, declaring Plaintiffs as representatives of the Class and Subclasses, and Plaintiffs' counsel as counsel for the Class and Subclasses;

B.    An order awarding declaratory relief and enjoining Defendants from continuing the unlawful, deceptive, fraudulent, harmful, and unfair business conduct and practices alleged herein;

C.    Injunctive and equitable relief in the form of a comprehensive program to repair or replace the drain valves and/or engines in all Class Vehicles, and/or buyback all Class Vehicles, and to fully reimburse and make whole all Class and Subclass members for all costs and economic losses;

D.    A declaration that Defendants are financially responsible for all Class notice

and the administration of Class relief;

E.      An order awarding costs, restitution, disgorgement, punitive damages, treble damages and exemplary damages under applicable law, and compensatory damages for economic loss and out-of-pocket costs in an amount to be determined at trial;

F.      An order awarding any applicable statutory and civil penalties;

G.      A declaration that Defendants are required to engage in corrective advertising;

H.      An order requiring Defendants to pay both pre- and post-judgment interest on any amounts awarded;

I.      An award of costs, expenses and attorneys' fees as permitted by law; and

J.      Such other or further relief as the Court may deem appropriate, just, and equitable.

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of any and all issues in this action so triable of right.

Dated: August 29, 2018                Respectfully submitted,

                                      **BURSOR & FISHER, P.A.**

                                      By: _____*/s/ Frederick J. Klorczyk III*_____
                                               Frederick J. Klorczyk III

                                      Frederick J. Klorczyk III
                                      Joel D. Smith (*pro hac vice* forthcoming)
                                      1990 North California Blvd., Suite 940
                                      Walnut Creek, CA  94596
                                      Telephone: (925) 300-4455
                                      Facsimile: (925) 407-2700
                                      Email:  fklorczyk@bursor.com
                                               jsmith@bursor.com

                                      **BURSOR & FISHER, P.A.**
                                      Philip L. Fraietta
                                      Andrew Obergfell
                                      888 Seventh Avenue
                                      Telephone: (646) 837-7150
                                      Facsimile: (212) 989-9163
                                      Email:  pfraietta@bursor.com
                                               aobergfell@bursor.com

                                      *Attorneys for Plaintiffs*