**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JODI CRANDELL, JUAN ONTIVEROS and JIM KETTELKAMP, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> VOLKSWAGEN GROUP OF AMERICA, INC. and VOLKSWAGEN AKTIENGESELLSCHAFT, <br><br> Defendants. | Civil Action No.: 18-cv-13377-CCC-MF <br><br> **ELECTRONICALLY FILED** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

**BURSOR & FISHER, P.A.**

Joel D. Smith (*pro hac vice*)
Frederick J. Klorczyk III
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email:  fklorczyk@bursor.com
        jsmith@bursor.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**PAGE(S)**

I.    INTRODUCTION ..................................................................................... 1

II.    ARGUMENT ........................................................................................... 1

    A.    It Is Premature To Make Any Choice Of Law Determinations ............................. 1

    B.    Plaintiffs Do Not Impermissibly Lump Defendants Together ............................... 2

    C.    Plaintiffs States Claims For Breach Of Express And Implied Warranties ............ 3

        1.    Plaintiffs State Claims For Breach Of Express Warranty .......................... 3

            a)    VWGoA Is The Alter Ego Of VWAG ............................................ 3

            b)    Plaintiffs Do Not Merely Allege A Design Defect ........................ 3

            c)    Defendants' Maintenance Schedule Is An Express Warranty ........ 5

            d)    Plaintiff Crandell States A Claim For Breach Of Express Warranty .............................................................................................. 7

            e)    Plaintiff Ontiveros States A Claim For Breach Of Express Warranty .............................................................................................. 8

        2.    Plaintiffs State Claims For Breach of Implied Warranty .......................... 10

        3.    Plaintiffs State Claims Under The Magnuson-Moss Warranty Act .......... 11

    D.    Plaintiffs State Claims For Unjust Enrichment ...................................................... 11

        1.    Defendants' Arguments For Dismissal Of The Unjust Enrichment Claim Are Contrary To Rule 8 ................................................................ 11

        2.    Defendants' Arguments For Dismissal Of Specific Plaintiffs' Unjust Enrichment Claims Lack Merit ................................................................ 13

            a)    Plaintiff Crandell States An Unjust Enrichment Claim ............... 13

            b)    Plaintiff Ontiveros States An Unjust Enrichment Claim ............. 14

            c)    Plaintiff Kettelkamp States An Unjust Enrichment Claim .......... 15

    E.    Plaintiffs State Claims For Breach Of The Implied Covenant Of Good Faith And Fair Dealing ................................................................................................ 17

    1.    Plaintiffs' Warranty Unconscionability Allegations Support Their Implied Covenant Claims ........................................................................ 17

    2.    Plaintiffs Sufficiently Allege Bad Motive Or Intent................................. 19

F.    Plaintiffs State Omission-Based Fraud And Consumer Statutory Claims............ 20

    1.    Plaintiffs Sufficiently Allege Defendants' Pre-Sale Knowledge.............. 20

    2.    Plaintiffs Crandell And Ontiveros Sufficiently Allege A Duty to Disclose............................................................................................ 24

    3.    Defendants' Arguments Concerning The Fraud And Statutory Claims Of Specific Plaintiffs Lack Merit............................................................ 26

        a)    Plaintiff Ontiveros.......................................................... 26

        b)    Plaintiff Crandell........................................................... 28

        c)    Plaintiff Kettelkamp....................................................... 29

III.    CONCLUSION .................................................................................... 30

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adams v. Nissan N. Am., Inc.*,
   2018 WL 2338871 (S.D. Tex. 2018)..................................................................... 12, 15, 16

*Afzal v. BMW of N. Am., LLC*,
   2016 WL 6126913 (D.N.J. Oct. 17, 2016) ............................................................... 19

*Alin v. Am. Honda Motor Co.*,
   2010 WL 1372308 (D.N.J. Mar. 31, 2010) ............................................................ 4, 14

*Anderson v. Ford Motor*,
   Co., 2017 WL 6733972 (W.D. Mo. Dec. 29, 2017).................................................. 30

*Argabright v. Rheem Mfg. Co.*,
   201 F. Supp. 3d 578 (D.N.J. 2016) ...................................................................... 8, 11

*Bedi v. BMW N. Am., LLC*,
   2016 WL 324950 (D.N.J. Jan. 27, 2016) ................................................................. 14

*Block v. Jaguar Land Rover N. Am., LLC*,
   2016 WL 3032682 (D.N.J. May 26, 2016) ............................................................... 20

*Chan v. Daimler*,
   2012 WL 5827448 (D.N.J. Nov. 9, 2012).................................................................. 29

*Chernus v. Logitech, Inc.*,
   2018 WL 1981481 (D.N.J. Apr. 27, 2018) ............................................................... 29

*CHNJ Investors, LLC v. Koger*,
   2013 WL 1192400 (D.N.J. Mar. 21, 2013) ............................................................... 12

*Ciser v. Nestle Water N. Am., Inc.*,
   596 Fed. App'x 157 (3d Cir. 2015)......................................................................... 29

*Colgan Air, Inc. v. Raytheon Aircraft Co.*,
   507 F.3d 270 (4th Cir. 2007)................................................................................... 7

*Columbus LTACH Mgmt., LLC v. Quantum LTACH Holdings, LLC*,
   2018 WL 2455922 (D.N.J. May 31, 2018) ............................................................... 29

*Cox v. Chrysler Grp., LLC*,
  2015 WL 5771400 (D.N.J. Sept. 30, 2015 ) ............................................................. 4

*Cty. of Essex v. Aetna, Inc.*,
  2018 WL 6584920 (D.N.J. 2018) .......................................................................... 12

*David v. Volkswagen Grp. of Am., Inc.*,
  2018 WL 1960447 n.5 (D.N.J. Apr. 26, 2018) ........................................................ 5

*Delfingen US-Texas, L.P. v. Valenzuela*,
  407 S.W.3d 791 (Tex. App. 2013) ...................................................................... 8, 9

*Dewey v. Volkswagen AG*,
  558 F. Supp. 2d 505 (D.N.J. 2008) ................................................................. passim

*Doyle v. Chrysler Grp. LLC*,
  2014 WL 1910628 (C.D. Cal. Jan. 29, 2014) ..................................................... 27, 28

*Elias v. Ungar's Food Products, Inc.*,
  252 F.R.D. 233 (D.N.J., 2008) .............................................................................. 5

*Everett v. TK-Taito, LLC*,
  178 S.W.3d 844 (Tex. App. 2005) ............................................................ 10, 26, 27

*Feuerstein v. Simpson*,
  582 Fed. App'x. 93 (3rd Cir. 2014) ....................................................................... 30

*Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*,
  525 Fed. App'x 94 (3d Cir. 2013) ......................................................................... 23

*Granillo v. FCA US LLC*,
  2016 WL 94505772 (D.N.J. Aug. 29, 2016) ..................................................... 23, 29

*Greene v. BMW of N. Am.*,
  2012 WL 5986457 (D.N.J. Nov. 28, 2012) ............................................................ 23

*Greene v. BMW of N. Am.*,
  2013 WL 5287314 (D.N.J. Sept. 17, 2013) ............................................................ 18

*Hays v. Nissan N. Am. Inc.*,
  297 F. Supp. 3d 958 (W.D. Mo. 2017) .................................................................. 16

*Henderson v. Volvo Cars of N. Am., LLC*,
  2010 WL 2925913 (D.N.J. July 21, 2010) ......................................................... 17, 18

*In re AZEK Bldg. Prod., Inc., Mktg. & Sales Practices Litig.*,
    82 F. Supp. 3d 608 (D.N.J. 2015) ........................................................ 17

*In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liability Litig.*,
    687 F. Supp. 2d 897 (W.D. Mo. 2009) ................................................ 16

*In re Ford Motor Co. E-350 Van Prods. Liability Litig*,
    2011 WL 601279 (D.N.J. Feb. 2011) ................................................... 14

*In re GM Ignition*,
    257 F. Supp. 3d at 451 ........................................................................ 27

*In re Insurance Brokerage Antitrust Litig.*,
    2017 WL 3642003 (D.N.J. Aug. 23, 2017) .......................................... 12

*In re K-Dur Antitrust Litig.*,
    338 F. Supp. 2d 517 (D.N.J. 2004) ........................................................ 2

*In re Mercedes-Benz Emissions Litig.*,
    2019 WL 413541 (D.N.J. Feb. 1, 2019) .................................................. 2

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
    2017 WL 1902160 (D.N.J. May 8, 2017) ..................................... passim

*Janvey v. Alguire*,
    2018 WL 4335677 (N.D. Tex. Sept. 11, 2018) .................................... 14

*Keegan v. Am. Honda Motor Co.*,
    284 F.R.D. 504 (C.D. Cal. 2012) ........................................................... 8

*Kirkpatrick v. HomeAway.com, Inc.*,
    2017 WL 7732177 (W.D. Tex. Aug. 1, 2017) ...................................... 15

*Luongo v. Vill. Supermarket, Inc.*,
    261 F. Supp. 3d 520 (D.N.J. 2017) ...................................................... 19

*Marangos v. Swett*,
    341 F. App'x 752 (3d Cir. 2009) ......................................................... 21

*McCabe v. Daimler AG*,
    948 F. Supp. 2d 1347 (N.D. Ga. 2013) ............................................... 25

*Merkin v. Honda N. Am., Inc.*,
    2017 WL 5309623 (D.N.J. Nov. 13, 2017) ..................................... 14, 20

*METX, LLC v. Wal-Mart Stores Texas, LLC*,
   62 F. Supp. 3d 569 (E.D. Tex. 2014) ................................................................ 15

*Mickens v. Ford Co.*,
   2011 WL 344055 (D.N.J. Aug. 5, 2011) ............................................................ 5

*Mickens v. Ford Motor Co.*,
   2015 WL 5310755 (D.N.J. Sept. 10, 2015) ...................................................... 29

*Morcom v. LG Elecs. USA, Inc.*,
   2017 WL 8784836 (D.N.J. Nov. 30, 2017) .............................................. passim

*Nataragjan v. CLS Bank Intern.*,
   2014 WL 1745024 n.4 (D.N.J. Apr. 30, 2014) ................................................ 24

*Nelson v. Nissan N. Am., Inc.*,
   2014 WL 7331922 (D.N.J. Dec. 19, 2014) ........................................................ 5

*New York Mechanical Contractors, LLC v. Sabema Plumbing & Heating Co., Inc.*,
   2012 WL 209349 n.2 (D.N.J. Jan. 24, 2012) .................................................. 14

*Paquin v. Ins. Co. of the State of Pa.*,
   2016 WL 1322479 n.8 (W.D. La. Apr. 1, 2016) .............................................. 25

*Persad v. Ford Motor Co.*,
   2018 WL 3428690 (E.D. Mich. July 16, 2018) ................................................ 22

*Peterson for Lancelot Inv'rs Fund, L.P. v. Imhof*,
   2017 WL 1837856 (D.N.J. May 8, 2017) .......................................................... 3

*Pollard v. Remington Arms Co., LLC*,
   2013 WL 3039797 (W.D. Mo. June 17, 2013) ................................................ 16

*Price v. Kawasaki Motors Corp., USA*,
   2011 WL 10948588 (C.D. Cal. Jan. 24, 2011) .................................................. 6

*R.W. Murray Co. v. Shatterproof Glass Corp.*,
   697 F.2d 818 (8th Cir. 1983) ............................................................................ 30

*Reitz v. Nationstar Mortg., LLC*,
   954 F. Supp. 2d 870 (E.D. Mo. June 27, 2013) .............................................. 20

*S & J, Inc. v. McLoud & Co.*,
   108 S.W.3d 765 (Mo. Ct. App. 2003) .............................................................. 16

*Skeen v. BMW of N. Am., LLC,*
    2014 WL 283628 (D.N.J. Jan. 24, 2014) ............................................... 8, 9

*TCP Printing Co. LLC v. Enter. Bank & Trust,*
    2017 WL 4357378 (E.D. Mo. Sept. 29, 2017) ......................................... 19

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    127 S.Ct. 2499 (2007) ............................................................................. 23

*The Indep. Bankersbank v. Canyon Cmty. Bank,*
    13 F. Supp. 3d 661 (N.D. Tex. 2014) ................................................ 11, 12

*Thiedemann v. Mercedes-Benz USA, LLC,*
    872 A.2d 783 (2005) ............................................................................... 29

*U.S. Accu-Measurements, LLC v. Ruby Tuesday, Inc.,*
    2014 WL 197878 (D.N.J. Jan. 14, 2014) ................................................ 12

*Victorian v. Wells Fargo Home Mortg.,*
    2017 WL 2535673 (E.D. Mo. June 12, 2017) ......................................... 19

*Vision Pharma, LLC v. Sunrise Pharm., Inc.,*
    2018 WL 3085213 (D.N.J. June 20, 2018) .............................................. 24

*Wade v. Kessler Inst.,*
    172 N.J. 327, 798 A.2d 1251 (N.J. 2002) .............................................. 19

*Weeks v. Google LLC,*
    2018 WL 3933398 (N.D. Cal. Aug. 16, 2018) ........................................ 20

*White v. Zhou Pei,*
    452 S.W.3d 527 (Tx. App. 2014) ........................................................... 25

*Wilson v. Volkswagen Grp. Of Am., Inc.,*
    2018 WL 4623539 (S.D. Fla. Sept. 26, 2016) .................................... 29, 30

*Wright v. Bath & Body Works Direct, Inc.,*
    2012 WL 12951921 (W.D. Mo. July 10, 2012) ....................................... 17

## STATUTES

15 U.S.C. §§ 2301(1)-(6) ................................................................................ 11

**RULES**

Fed. R. Civ. P. 8 ................................................................................................ 1, 21

Fed. R. Civ. P. 9(b) ......................................................................................... 20, 21

**OTHER AUTHORITIES**

Wright & Miller, Fed. Prac. & Proc. Civ. (4th ed.) ...................................................... 21

## I.      INTRODUCTION

Defendants' motion to dismiss conspicuously says nothing about *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160 (D.N.J. May 8, 2017) ("*In re Volkswagen*").  That is surprising because not only does this case concern the same defendants and defense counsel, but also many of the same arguments – all of which were rejected by Judge Linares in *In re Volkswagen*.  Given that Plaintiffs' operative complaint is modeled in part on *In re Volkswagen*, Defendants' arguments here fail for the same reasons.  Even if the Court were inclined to grant Defendants' motion in its entirety (which it should not for the reasons discussed below), this case will still proceed into discovery because Defendants do not move to dismiss Plaintiff Kettelkamp's claim for breach of express warranty.

## II.     ARGUMENT

### A.      It Is Premature To Make Any Choice Of Law Determinations

Defendants assert that "[l]ike the FAC, th[eir] motion to dismiss applies the law of each Plaintiff's home state – which is also the state in which each Plaintiff purchased or leased his/her vehicle – to the respective Plaintiffs' claims."  MTD at 4 n.3.  For instance, Defendants argue that Texas law should be applied to Plaintiff Ontiveros' express and implied warranty claims.  *See id.* at 8, 11, 14.  According to Defendants, that's because "[u]nder New Jersey choice of law rules, the law of each Plaintiff's state of residence and purchase/lease applies to his/her claim."  *Id.*  Despite Defendants' belief otherwise, there is a "disagreement among the parties in this regard."  *Id.*[1]  That is because the "choice of law analysis has routinely been found to be premature at the motion to dismiss phase of a class action law suit, especially when certain discovery is needed to further develop the facts that will be used in the choice of law analysis."

---

[1] Even if only one state's law could ultimately apply, Fed. R. Civ. P. 8(d) permits Plaintiffs to plead alternative claims, and applies equally to contentions regarding the applicable law.

*In re Volkswagen*, 2017 WL 1902160, at *10.  Even more so where, as here, "Defendant[s] ha[ve] failed to explain how Plaintiffs' common law claims conflict among their home states." *Id.*; *see also In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 541 (D.N.J. 2004) (same).  Thus, regardless of whether Plaintiff Ontiveros' individual claims under Texas law – as well as Plaintiff Kettelkamp's individual claims under Missouri law (which Defendants' do not challenge) – survive this motion, their claims on behalf the class under New Jersey law nonetheless survive.

> **B.      Plaintiffs Do Not Impermissibly Lump Defendants Together**

Defendants argue that "Plaintiffs improperly lump together VWGoA and VWAG under their own defined term 'Defendants.'"  MTD at 5.  However, even the stricter "Rule 9(b) does not require that that a plaintiff plead with specificity 'which fraudulent acts were caused or performed by which individual defendants.'"  *In re Mercedes-Benz Emissions Litig.*, 2019 WL 413541, at *14 (D.N.J. Feb. 1, 2019) (citation omitted).  As in *In re Volkswagen*, Defendants' "argument is not persuasive.  While Plaintiffs do use the term 'Defendants' throughout the [FAC], they also make particularized allegations against each Defendant, including Defendant VW America, separately."  *In re Volkswagen*, 2017 WL 1902160, at *9.  Here, Plaintiff's allegations are nearly identical to those Judge Linares found sufficient.  *Compare In re Volkswagen*, 2017 WL 1902160, at *10, *with* FAC ¶¶ 29-33, 37, 40-41, 44, 64, 96, 103, 109, 121, 132, 139, 156, 169 (alleging pre-sale knowledge) and *id.* ¶¶ 5, 36, 47, 155, 168, 180 (alleging superior knowledge).  Further, to the extent Plaintiffs assert common allegations, this is because "it is because the entities are intertwined through a complex corporate structure." *In re Volkswagen,* 2017 WL 1902160, at *9; *see also* FAC ¶ 31.  Plaintiffs also "cannot be expected to know the exact corporate structure and degree of each Defendant's involvement, at this stage in the litigation and prior to discovery." *In re Volkswagen,* 2017 WL 1902160, at *9.

2

### C.        Plaintiffs States Claims For Breach Of Express And Implied Warranties

#### 1.        Plaintiffs State Claims For Breach Of Express Warranty

##### a)        VWGoA Is The Alter Ego Of VWAG

Defendants contend that because the "NVLWs [New Vehicle Limited Warranties] and

Powertrain Warranties applicable to Plaintiffs' vehicles specifically state that they were issued

only by VWGoA," "Plaintiffs' claims for breach of express warranty must be dismissed as

against VWAG."  MTD at 5-6.  That is wrong.  As Plaintiff alleges, VWGoA is merely the alter

ego and/or agent of VWAG.  *See* FAC ¶ 31.  Defendants do not dispute this allegation.  As such,

whether VWGoA is the alter ego of VWAG is a factual question that cannot be resolved on a

motion to dismiss.  *See, e.g.*, *Peterson for Lancelot Inv'rs Fund, L.P. v. Imhof*, 2017 WL

1837856, at *12 (D.N.J. May 8, 2017) (denying "summary judgment because questions of

material fact remain as to whether Kennedy was an alter ego of the Wolfers and the Wolfers are

not entitled to judgment as a matter of law.").  That is especially true in the context of Plaintiffs'

warranty claims given that it appears that VWAG is responsible for the content of Defendants'

express warranties.  *See* Defs.' Ex. B at Afterword ("Volkswagen AG expressly reserves all

rights under applicable copyright law."); Defs.' Ex. A at Afterword (same).

##### b)        Plaintiffs Do Not Merely Allege A Design Defect

Defendants next argue that Plaintiffs fail to state a claim "because the NVLWs and

Powertrain Warranties applicable to their vehicles specifically cover only repairs 'to correct a

defect in manufacturer's material or workmanship.'"  MTD at 6.  According to Defendants,

"[c]ourts throughout the country, including this District, have recognized that such language in a

warranty does not cover purported design defects."  *Id.*  That is wrong.

As Judge Linares explained in rejecting this very same argument, "[c]ourts within this

district have refused to apply a distinction between a defect in design and a defect in materials or

3

workmanship at the pleadings stage of litigation." *In re Volkswagen*, 2017 WL 1902160, at *12; *see also Alin v. Am. Honda Motor Co*., 2010 WL 1372308, at *6 (D.N.J. Mar. 31, 2010) ("where the distinction between defect in design and defect in materials or workmanship is a matter of semantics, and sufficient facts are alleged to assert both, the defendant's characterization of the nature of the claim pre-discovery should not control whether the complaint survives."); *Cox v. Chrysler Grp., LLC*, 2015 WL 5771400, at *6 (D.N.J. Sept. 30, 2015 ) (same).

As in *In re Volkswagen*, Plaintiffs' complaint "contains sufficient factual allegations to assert a breach of the warranty, regardless of whether the defect is in design or in manufacturing and workmanship." *In re Volkswagen*, 2017 WL 1902160, at *12.  "[E]ven if the NLVWs only cover design defects, Plaintiffs' allegations specifically point to defects in the materials and/or the workmanship." *Id.*; *compare id.* ("The Complaint describes how various materials within the Timing Chain System break and/or fail, and how that failure leads to the motor failing in general. …  Plaintiffs also make allegations regarding how the material used in the ratchet pawl sintered metal is defective and fails over time.  …  These allegations were designed to point to specific materials and/or workmanship that contained defects known to Defendant, which by its own admissions and arguments, would be covered by the NLVWs.") and *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 522 (D.N.J. 2008) ("The Court will deny Defendants' motion to dismiss Delguercio's express warranty claim on the limited question of whether 'the location, housing and placement' of the powertrain, transmission, and TCM, 'allow[ed] the powertrain, transmission, and TCM to be damaged by water entering the interior of the vehicles,' and whether this constitutes a 'defect in material or workmanship' under the extended warranty."), *with* FAC ¶ 48 ("The location, housing and placement of the engine's air intake system, drain valves, and airbox/air filter cause or contribute to the ingestion of water and constitute a defect in

4

design, materials and workmanship. Defendants' failure to design, assemble and manufacture the engine's air intake system, drain valves, and airbox/air filter in such a way as to prevent the ingestion of water also is a defect in materials and workmanship, as well as design.") and *id.* ¶ 2 (alleging the "air intake systems in the Class Vehicles are equipped with drain valves that do not allow water to drain properly from the engine compartment…[which] allows water to collect in the bottom of the Touaregs' air boxes, thereby damaging the vehicles' air filters…[and] to be ingested into the Touaregs' engines and cause sudden engine failure."); *see also* FAC ¶¶ 34-40, 45, 48, 96-97.[2]

### c) Defendants' Maintenance Schedule Is An Express Warranty

Defendants contend that because Plaintiffs do not allege that they "saw or read such advertisements, much less relied upon them[,] [t]hey have, thus, failed to establish an essential element of their claim." MTD at 10. However, "[a]s a rule, no proof of the buyer's reliance on the warranty is necessary other than that the seller's statements were of a kind which naturally would induce the purchase. The warranty need not be the sole inducement." *Elias v. Ungar's Food Products, Inc.* 252 F.R.D. 233, 239 (D.N.J., 2008). Thus, Defendants argue – in a footnote – that "[t]here is no validity to Plaintiffs' claim that the drain valve was somehow expressly

---

[2] Defendants also assert that because Plaintiffs have alleged that the same common defect exists in every vehicle, it "is a classic claim of design defect, as distinguished from a manufacturing defect that necessarily differentiates on single vehicle from all others of the same model and design." MTD at 7. That argument fails for the reasons already discussed. Defendants' reliance on *David v. Volkswagen Grp. of Am., Inc.*, 2018 WL 1960447, at *5 n.5 (D.N.J. Apr. 26, 2018) is also misplaced as the cases *David* relies on – *Nelson* and *Mickens* – were applying California express warranty law and the NJCFA, respectively. *See Nelson v. Nissan N. Am., Inc.*, 2014 WL 7331922, at *1 (D.N.J. Dec. 19, 2014) ("Nelson asserts four claims under California law: (1) breach of express warranty; …"); *Mickens v. Ford Co.*, 2011 WL 344055, at *3 (D.N.J. Aug. 5, 2011) (discussing NJCFA).

'warranted' to be maintenance-free for the life of a vehicle, simply because it was not specifically mentioned in the vehicles' maintenance schedules." MTD at 11 n. 6. That is false.

"These representations [in the maintenance schedule] reveal that the air intake system was a non-maintenance engine component not subject to inspection at pre-determined intervals. The only components of the air intake system in the Class Vehicles that are subject to maintenance – let alone a visual inspection – at pre-determined intervals are the 'air filter element and snow screen,' which are scheduled to be replaced every 60,000 miles." FAC ¶ 62. Indeed, the maintenance schedule – found in the warranty booklet – states:

> With proper maintenance and care, your Volkswagen model will continue to provide you with a dependable and safe driving experience. This booklet contains Volkswagen's prescribed service intervals as well as other important information you need to know to care for your Volkswagen model properly. **Adherence to the prescribed maintenance services and intervals is necessary to protect your investment and help ensure optimum performance. Failure to follow recommended maintenance services and intervals may result in a denial of your warranty coverage. Please see the warranty section of this booklet for further details.** Your vehicle is designed to keep maintenance requirements to a minimum.

Defs.' Ex. B at 30-31 (emphasis in original); *see also* Defs.' Ex. A at 32-33. It further specifies the parameters of "do-it-yourself service" that Defendants find acceptable:

> **Do-it-yourself service**
> Your Owner's Manual contains many helpful hints on what you can service yourself.
> – You can check tires for wear or damage and correct tire pressure, including the spare.
> – You can check the windshield washer container.
> – You can check your car's interior and exterior lighting system for correct functioning.
> – You can check the engine oil level with every fuel filling.
> – You can perform these simple checks once a week. They save time, trouble and expense later.

Defs.' Ex. A at 32; *see also* Defs.' Ex. B at 30.

Plaintiffs' allegations are therefore sufficient.  *See, e.g.*, *Price v. Kawasaki Motors Corp., USA*, 2011 WL 10948588, at *7 (C.D. Cal. Jan. 24, 2011) ("It is plausible to assume these statements were part of the basis of the bargain.  …  The Court does not agree with KMC's view that 'adding oil [does not] amount to a breach of warranty, as that is part of proper maintenance.' …  Here, the motorcycle was warranted to be free from problems for one year, including having to add oil nineteen times in six months, when the Periodic Maintenance Schedule would lead one to expect a much lower frequency.  …  Accordingly, the Court finds that Price has alleged a claim for breach of express warranty."); *Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 279–80 (4th Cir. 2007) ("Although the statement in this case appears to be buried on one of thousands of pages in the maintenance manual, a jury could nonetheless find that it is a statement that promises how the maintenance manual performs, i.e., that it 'ensures' against improper trim tab operation.  …  Therefore, we conclude that an issue of fact exists for the jury as to whether the statement constitutes an express warranty.").

### d)  Plaintiff Crandell States A Claim For Breach Of Express Warranty

Defendants argue that "Plaintiff Crandall also has no claim for breach of express warranty because the FAC admits that her vehicle was repaired free of charge … [and] cannot circumvent this fact by vague and conclusory allegations that her vehicle's repair was somehow not 'reliable.'"  MTD at 9.  That is meritless.  Defendants' "repair" amounts to nothing more than the jerry-rigging of an already-defective part:

> The invoice further confirms that Defendants claimed to "repair" the Drain Valve Defect in Plaintiff Crandell's Touareg by "clear[ing] and trimm[ing] [the defective] drain" valve. Defendants' jerry-rigging of Plaintiff Crandell's Touareg – through modification of the faulty drain valve itself – confirms the existence of the Drain Valve Defect in the Class Vehicles. Moreover, Defendants have not tested the ad hoc measures used to modify Plaintiff Crandell's vehicle, nor issued a Technical Service

7

> Bulletin approving of those measures, and thus the measures taken
> do not reliably correct the defects in design, workmanship,
> material and/or manufacturing.

FAC ¶ 17.  That is sufficient at this stage.  *See Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 536 (C.D. Cal. 2012) (granting class certification on breach of express warranty claims where some of the class members had an allegedly defective component replaced through "goodwill programs" but alleged that the repair was inadequate because it did not address the underlying problem).  *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 592 (D.N.J. 2016), does not support Defendants' position as there, the defendant honored its warranty to repair or replace by replacing the part.  *Id.*  Here, by contrast, Defendants neither repaired nor replaced parts due to the manifestation of the Drain Valve Defect in Plaintiff Crandell's vehicle – they simply modified the already-defective drain valves and re-installed them.

### e)    Plaintiff Ontiveros States A Claim For Breach Of Express Warranty

Defendants argue that "Plaintiff Ontiveros' breach of express warranty claim also fails because he does not claim to have ever experienced a problem with his vehicle's drain valve." MTD at 8.  That is not fatal to his claims.

In New Jersey, "[w]here the alleged breach regards a latent defect that manifests outside the period covered by the warranty, a plaintiff may sometimes state a claim if he alleges that the warranty was unconscionable."  *Skeen v. BMW of N. Am., LLC*, 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014).[3]  Unconscionability may be either "substantive" or "procedural."  *Id.*  "[C]ourts will find a contract term to be substantively unconscionable if the term is excessively

---

[3] Defendants insist Texas law applies to Plaintiff Ontiveros' express warranty claim.  *See* MTD at 8.  Once again, that it is premature.  In any event, "Texas recognizes both procedural and substantive unconscionability."  *Delfingen US-Texas, L.P. v. Valenzuela*, 407 S.W.3d 791, 797 (Tex. App. 2013).

disproportionate, involving an exchange of obligations so one-sided as to shock the court's conscience." *Id.* "[P]rocedural unconscionability focuses on the circumstances of the negotiation that produced the contested term, especially the personal qualities of the negotiators." *Id.* Courts find procedural unconscionability where the plaintiffs had "no meaningful choice" in a warranty negotiation characterized by "a gross disparity in bargaining power." *Id.*

Plaintiffs allege just that:

> Defendants' written warranties also were unconscionable. Defendants knew about the Drain Valve Defect at the time of sale or lease, but Plaintiffs and class members did not. The Drain Valve Defect manifests during or after the warranty period, but prior to the end of the Class Vehicles' useful lives. Plaintiffs and class members had no meaningful choice in determining the temporal and/or mileage limits of the warranties. The warranties were drafted by Defendants, without any input from consumers, and there was a gross disparity in bargaining power in favor of Defendants. As a result, the terms of the warranties unreasonably favored Defendants.

FAC ¶ 64; *see also id.* ¶¶ 31, 33, 37, 40-41, 44, 96, 103, 109, 121, 132, 139, 156, 169 (alleging pre-sale knowledge); *id.* ¶¶ 5, 36, 47, 155, 168, 180 (alleging superior knowledge).  Similar allegations have supported claims that Defendants' warranty was substantively and procedurally unconscionable.  *See In re Volkswagen*, 2017 WL 1902160 at *12.[4]  Because "unconscionability is highly fact dependent," the Court should deny Defendants' to request to dismiss this claim. *Skeen*, 2014 WL 283628, at *15.

---

[4] The plaintiffs in *In re Volkswagen* alleged: "Just as in *Skeen*, Plaintiffs have pled that Defendant was well aware of the defect in their vehicles' Timing Chain Systems. … Plaintiffs further pled that said defect manifests during and/or shortly after the warranty period, but prior to the end of the Class vehicles' useful lives. … Moreover, Plaintiffs allege that Defendant had superior knowledge regarding said defect. … Additionally, Plaintiffs have pled that they had no meaningful choice in determining the temporal and/or mileage limits of the NLVWs. … Finally, Plaintiffs allege that the NLVWs were drafted by Defendant, without any input, let alone meaningful input, from Plaintiffs, that there was a gross disparity in bargaining power in favor of Defendant, the terms of the NLVWs unreasonably favored Defendant, and Defendant was aware of the defect at the time of sale." *In re Volkswagen*, 2017 WL 1902160, at *12.

### 2.    Plaintiffs State Claims For Breach of Implied Warranty

Defendants argue that "the alleged defect 'must cause the product not to function adequately in the performance of its ordinary function for the plaintiff. … Despite having driven his vehicle for nearly four years, Ontiveros does not allege that his vehicle ever experienced a problem with the drain valve, much less that it manifested the alleged defect. Accordingly, Ontivero's implied warranty claim must be dismissed." MTD at 12. That is meritless under New Jersey law.[5]

> [T]he latency in manifestation is insufficient to support dismissal at this juncture of this litigation. … [A]s this Court explained above, Plaintiffs have sufficiently pled unconscionability of the NLVWs, which may result in the inapplicability of the NLVWs' time and mileage limitations. If said limitations are inapplicable, the express warranty claims may still be viable. <u>If the express warranty claims are viable due to the unconscionability of the limitation terms, then the implied warranty claims would remain viable as well, since the prior limitations relied on by Defendant[s] no longer bind Plaintiffs.</u> Accordingly, dismissal of the implied warranty claims pursuant to this argument is also inappropriate.

*In re Volkswagen*, 2017 WL 1902160, at *15 (emphasis added).

Defendants also argue that "Plaintiff Crandell's implied warranty claim does not fare any better … [because] Plaintiff admits that her vehicle was repaired during [the limited warranty] period, at no expense to her." MTD at 12. However, Plaintiff alleges that "the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs and Class members whole because, on information and belief, Defendants have failed and/or have refused to adequately provide the promised remedies within a reasonable time." FAC ¶ 97. "[T]he key inquiry in determining

---

[5] Once again, it is premature to apply Texas law. Even so, this argument also fails in Texas when it is alleged that manifestation of the defect is "inevitable when the defective feature of the product is used." *Everett v. TK-Taito, LLC*, 178 S.W.3d 844, 855 (Tex. App. 2005).

whether a limited remedy failed of its essential purpose is whether the buyer is given, within a reasonable time, goods that conform to the contract." *Argabright*, 201 F. Supp. 3d at 594 (internal quotations and alterations omitted).  As discussed above, Defendants' repair of Plaintiff Crandell's Touareg amounted to nothing more than an ad hoc modification to the already defective drain valves in her vehicle.  As this Court has held, "[w]hether a warranty fails of its essential purpose is a question of fact." *Morcom v. LG Elecs. USA, Inc.*, 2017 WL 8784836, at *5 (D.N.J. Nov. 30, 2017) (Cecchi, J.).

         **3.**      **Plaintiffs State Claims Under The Magnuson-Moss Warranty Act**

Defendant asserts that because "none of the Plaintiffs have stated a breach of express [or implied] warranty claim under any state law," their Magnuson-Moss Warranty Act ("MMWA") claim must fail.  MTD at 13-14.  That is wrong for the reasons set forth above.  Moreover, Defendants do not dispute that Plaintiffs have sufficiently plead each of the six necessary elements to establish a "written warranty" under the MMWA, 15 U.S.C. §§ 2301(1)-(6).

**D.**      **Plaintiffs State Claims For Unjust Enrichment**

         **1.**      **Defendants' Arguments For Dismissal Of The Unjust Enrichment Claim Are Contrary To Rule 8**

Defendants make two arguments that are applicable to all the Plaintiffs.  <u>First</u>, Defendants argue that a claim for unjust enrichment is unavailable where the parties have a valid contract, and because of that rule, Plaintiffs cannot plead an unjust enrichment claim in the alternative.  MTD at 14.  As a preliminary matter, that argument is inapplicable to VWAG. Defendant's own authorities hold that an unjust enrichment claim is available where "one party disputes the existence of a governing contract." *Id.* at 15 (quoting *The Indep. Bankersbank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 672 (N.D. Tex. 2014)).  An unjust enrichment claim therefore lies against VWAG because it disputes the existence of a contract between itself and

Plaintiffs. *See id.* at 5 ("no express warranty claim lies against VWAG, which did not issue the [New Vehicle Limited Warranty] or Powertrain Warranty").

As for *both* Defendants, the argument contradicts Rule 8(d)(2), which provides that "[a] party may set out 2 or more statements of a claim or defense *alternatively* or hypothetically …." (emphasis added). Rule 8(a)(3) likewise provides that a complaint may "include relief in the *alternative* [such as equitable relief here] or different types of relief." (emphasis added). In *In re Insurance Brokerage Antitrust Litig.*, this Court rejected the same argument Defendants make here based on Rule 8. 2017 WL 3642003, at *14 (D.N.J. Aug. 23, 2017) ("[A] plaintiff may plead a quasi-contract claim even if it is factually inconsistent with other claims or theories premised on the existence of a contract"). "It is only duplicate recovery that is prohibited," not alternative theories of liability. *U.S. Accu-Measurements, LLC v. Ruby Tuesday, Inc.*, 2014 WL 197878, at *3 (D.N.J. Jan. 14, 2014).

<u>Second</u>, Defendants argue that the unjust enrichment claim must be dismissed because Plaintiffs have an adequate remedy at law, but Rule 8 forecloses that argument too. In fact, one of the *same* Defendants here, VWGoA, unsuccessfully made the *same* argument in *In re Volkswagen*, which Judge Linares rejected because it contradicts Rule 8. *See* 2017 WL 1902160, at *21–22; *see also CHNJ Investors, LLC v. Koger*, 2013 WL 1192400, at *9-10 (D.N.J. Mar. 21, 2013) (citing Rule 8 and rejecting same argument).[6]

---

[6] To be sure, Defendants cite a few contrary opinions, but none directly addressed Rule 8(a)(3) or (d)(2), presumably because the plaintiffs in those cases did not raise it in their briefs. *See, e.g. Cty. of Essex v. Aetna, Inc.*, 2018 WL 6584920, at *8 (D.N.J. 2018); *The Indep. Bankersbank v. Canyon Cmty. Bank*, 13 F. Supp. 3d 661, 672 (N.D. Tex. 2014). Although the Texas district court in *Adams v. Nissan N. Am., Inc.*, 2018 WL 2338871, at *9-10 (S.D. Tex. 2018), referred to those rules in passing, the court did not reconcile its decision with that rule.

2.      **Defendants' Arguments For Dismissal Of Specific Plaintiffs' Unjust Enrichment Claims Lack Merit**

a)      **Plaintiff Crandell States An Unjust Enrichment Claim**

Defendants separately argue that Plaintiff Crandell's claim fails due to "the absence of a direct relationship between the parties." MTD at 15. This Court rejected a similar argument in *Morcom*, 2017 WL 8784836, at *10, another fraudulent omissions and product defect case. As this Court explained, "the 'direct relationship' requirement is simply meant to preclude a plaintiff from seeking recovery from a defendant whose involvement is too far removed or too attenuated from the facts and circumstances giving rise to the plaintiffs' claims, and thus only protects 'innocent third-parties.'" *Id.* (internal quotation and brackets omitted). Therefore, "'where a plaintiff alleges that a defendant manufacturer has made false claims or misrepresentations directed for the purpose of generating retail sales, and where those retail sales could have the effect of increasing the amount of wholesale sales to the manufacturer,' the 'direct relationship' requirement may be satisfied." *Id.* (citation omitted).

The allegations in the FAC support application of the rule in *Morcom* here, including the following allegation in Plaintiff's unjust enrichment claim:

> There is a direct relationship between Defendants on the one hand, and Plaintiffs and class members on the other, sufficient to support a claim for unjust enrichment. Defendants, acting in concert, failed to disclose the Drain Valve Defect to improve retail sales, which in turn could have the effect of increasing the amount of wholesale sales. Conversely, Defendants knew that disclosure of the Drain Valve Defect would suppress retail and wholesale sales of the Class Vehicles, suppress leasing of the Class Vehicles, and would negatively impact the reputation of Defendants' brand among Plaintiffs and class members. Defendants also knew their concealment and suppression of the Drain Valve Defect would discourage Plaintiffs and Class members from seeking replacement or repair of the drain valves and/or engines, thereby increasing profits and/or avoiding the cost of such replacement or repairs.

FAC ¶ 132; *see also id.* ¶¶ 130-31 (alleging Defendants unjustly profited from omissions).

13

None of Defendants' authorities addressed the rule in *Morcom* and *Stewart*, and therefore none of them support departing from the rule.  Both *Merkin v. Honda N. Am., Inc.*, 2017 WL 5309623, at *6 (D.N.J. Nov. 13, 2017), and *Bedi v. BMW N. Am., LLC*, 2016 WL 324950, at *6 (D.N.J. Jan. 27, 2016), are inapposite because the plaintiffs never alleged or argued there was a direct relationship.  Similarly, the outcome in *In re Ford Motor Co. E-350 Van Prods. Liability Litig,*, 2011 WL 601279, at *8-9 (D.N.J. Feb. 2011), was decided on summary judgment based on an evidentiary record, which just goes to show that the "direct relationship" issue is a factual dispute not susceptible to resolution on the pleadings.[7]

### b)    Plaintiff Ontiveros States An Unjust Enrichment Claim

As for Plaintiff Ontiveros, Defendants argue there is no cause of action for unjust enrichment under Texas law, and that a claim for money had and received requires an allegation that the defendant "received or is holding money that belongs to [the plaintiff]."  MTD at 17.  Those arguments do not support dismissal.  Under Texas law, claims for unjust enrichment and for "money had and received" are "substantively identical."  *Janvey v. Alguire*, 2018 WL 4335677, at *4 (N.D. Tex. Sept. 11, 2018).  Further, as this Court correctly explained in *Morcom*, 2017 WL 8784836, at *9, "[u]njust enrichment law does not vary in any substantive manner from state to state." (quotations omitted).[8]

---

[7] Defendants also cite *Alin*, 2010 WL 1372308, at *14–15, which also did not address the rule in *Morcom*.  In that case, the court rejected the plaintiff's direct relationship theory which, unlike here, was based solely on an agency theory, and there were no allegations in *Alin* that the defendant profited from the unjust conduct.

[8] Many states, including New Jersey, consider claims for unjust enrichment and "money had and received" to be essentially the same thing.  *See e.g.*, *New York Mechanical Contractors, LLC v. Sabema Plumbing & Heating Co., Inc.*, 2012 WL 209349, at *2 n.2 (D.N.J. Jan. 24, 2012) ("'unjust enrichment' and 'money had and received' are in essence the same claim …").

Just like plaintiffs in New Jersey, Missouri and other states, a plaintiff in Texas may seek restitution for money obtained by fraud, whether the claim is denominated as a claim for unjust enrichment or for money had and received. *See METX, LLC v. Wal-Mart Stores Texas, LLC*, 62 F. Supp. 3d 569, 586 (E.D. Tex. 2014) ("A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage"); *Kirkpatrick v. HomeAway.com, Inc.*, 2017 WL 7732177, at *11 (W.D. Tex. Aug. 1, 2017) (denying motion to dismiss unjust enrichment claim in consumer fraud case). In their FAC, Plaintiffs allege that Defendants "unjustly profited" from their omissions, and in their brief, Defendants do not argue that those allegations are deficient. *Compare* FAC ¶¶ 8, 130-132, 139, 154 *with* MTD at 17. Hence, the same allegations that support the unjust enrichment claims of Plaintiff Crandell and Kettelkamp support Plaintiff Ontiveros' claim too.

Finally, in a refrain of their "direct relationship" argument, Defendants incorrectly imply there is a rule requiring dismissal of unjust enrichment claims "where the plaintiffs did not purchase directly from defendants." MTD at 17. That is not the law, and *Adams* – the only case Defendants cite for that proposition – did not articulate any such rule. Instead, the *Adams* court dismissed the unjust enrichment claim because the plaintiffs "fail[ed] to allege that [defendant] received or [was] holding money that belonged to them," and "Plaintiffs' counsel conceded that [two of the three plaintiffs] had no cognizable claim for money had and received." *Adams*, 2018 WL 2338871, at *10. *Adams* therefore does not support Defendants' arguments.

### c)       Plaintiff Kettelkamp States An Unjust Enrichment Claim

Defendants' argue that Plaintiff Kettelkamp's claim should be dismissed because "the allegations [of Defendants' knowledge and failure to disclose] amount to mere passive acquiescence on the part of the Defendants," which they contend is "inadequate" to support an

unjust enrichment claim under Missouri law.  MTD at 17.  While application of Missouri law is premature, this argument nonetheless fails for two reasons.

First, the argument ignores the allegations of Defendants' *active* concealment and monitoring of information concerning the Drain Valve Defect.  *See*, *e.g.*, FAC ¶¶ 8, 39, 45, 69, 141.  These allegations include, for example, Defendants' uniform policy of accusing victims who experience the defect of driving through a lake or standing water.  *Id.* ¶¶ 16, 23, 45.  The fact that drivers across the country face nearly identical accusations when seeking repairs for the defect cannot be a mere coincidence.  *See id.*

Second, Defendants' "passive acquiescence" argument is based on an incomplete and inaccurate statement of the law.  Here is the *complete* statement of the rule in Missouri that Defendants fail to disclose in their brief:  "[t]here must be something more than passive acquiescence, *such as fault or undue advantage on the part of the defendant*, for defendant's retention of the benefit to be unjust."  *S & J, Inc. v. McLoud & Co.*, 108 S.W.3d 765, 769 (Mo. Ct. App. 2003) (emphasis added).  This rule is similar to the reasoning in *Morcom* about the "direct relationship" requirement under New Jersey law, inasmuch as it shows that in Missouri (like in New Jersey) unjust enrichment claims are generally not intended to reach "innocent third-parties."  *Morcom*, 2017 WL 8784836, at *10.

In fact, numerous courts have held that the same allegations that support a fraudulent omission claim can also support an unjust enrichment claim under Missouri law.  *See*, *e.g.*, *Hays v. Nissan N. Am. Inc.*, 297 F. Supp. 3d 958, 962–64 (W.D. Mo. 2017) (denying motion to dismiss fraudulent omission and unjust enrichment claims); *In re Bisphenol-A (BPA) Polycarbonate Plastic Prods. Liability Litig.*, 687 F. Supp. 2d 897, 908-910 (W.D. Mo. 2009) (same); *Pollard v. Remington Arms Co., LLC*, 2013 WL 3039797, at *5, 7 (W.D. Mo. June 17, 2013) (same).  In

contrast, Defendants cite only one case for their "passive acquiescence" argument, *Wright v. Bath & Body Works Direct, Inc.*, 2012 WL 12951921, at *3-4 (W.D. Mo. July 10, 2012).  Based on a review of Westlaw, no court has ever interpreted or cited *Wright* for the proposition that fraudulent omissions can amount to mere "passive acquiescence."  That interpretation is far-fetched, and contrary to the weight of authority cited above.

### E.   Plaintiffs State Claims For Breach Of The Implied Covenant Of Good Faith And Fair Dealing

Defendants make two arguments for dismissal of the claim for breach of the implied covenant of good faith and fair dealing ("implied covenant claim").  Specifically, they argue: (1) "no contract of sale or leasing contact exists between the parties that could serve as a basis for Plaintiffs' claim;" and (2) Plaintiffs do not sufficiently allege Defendants "acted with bad motive."  MTD at 18, 19.  As set forth below, neither argument supports dismissal.

#### 1.   Plaintiffs' Warranty Unconscionability Allegations Support Their Implied Covenant Claims

Defendants are incorrect when they argue that the implied covenant claim depends on the existence of a sale or lease contract between the parties.  Where, as here, "warranty unconscionability has been alleged … the Court will not dismiss Plaintiffs' claim for breach of the implied covenant and fair dealing at the motion to dismiss stage." *Henderson v. Volvo Cars of N. Am., LLC*, 2010 WL 2925913, at *13 (D.N.J. July 21, 2010).  Allegations that plaintiffs purchased a product from an actual or apparent agent of the manufacturer, and that the product had a warranty, are sufficient to allege contractual privity and survive a motion to dismiss.  *See In re AZEK Bldg. Prod., Inc., Mktg. & Sales Practices Litig.*, 82 F. Supp. 3d 608, 618-20 (D.N.J. 2015) (first discussing privity allegations and then denying motion to dismiss implied covenant claims).  These principles are illustrated in *Dewey*, 558 F. Supp. 2d at 531, where the district court denied a motion to dismiss an implied covenant claim against one of the same defendants

17

here, VWAG.  As in *Henderson* and *Dewey*, Plaintiffs allege "warranty unconscionability."
*Henderson*, 2012 WL 2925913, at *13.  Regardless, Defendant VWGoA admits that it warranted
the Class Vehicles.  *See* MTD at 5 ("The NVLW's and Powertrain Warranties applicable to
Plaintiffs' vehicles specifically state that they were issued only by VWGoA").  Therefore, at a
minimum, the Court should deny dismissal of the implied covenant claim against VWGoA.

The privity and agency allegations also are sufficient to support an implied covenant
claim against VWAG.  Plaintiffs allege they "had sufficient direct dealings with Defendants or
their agents (dealerships) to establish privity of contract between Defendants, on the one hand,
and Plaintiffs and Class members, on the other hand."  FAC ¶ 120.  That allegation is bolstered
by other allegations throughout the FAC.  *Id.* ¶ 31 (VWGoA is an agent of VWAG); *id.* ¶ 32
(Defendants warranted the Class Vehicles through their agents); *id.* ¶ 33 (VW authorized dealers
and service centers are Defendants' agents); *id.* ¶ 64 (Plaintiffs relied on Defendants' agents'
representations); *id.* ¶ 103 (Plaintiffs purchased their vehicles through Defendants' agents).

Defendants' authorities do not support dismissal.  The only case Defendants cite that is
remotely on point is *Greene v. BMW of N. Am.*, 2013 WL 5287314, at *4 (D.N.J. Sept. 17,
2013), but that case confirms that an implied covenant claim may be based on a manufacturer's
warranty.  *Greene* involved defective tires, and the plaintiff sued a car manufacturer (BMW) and
a tire manufacturer (Bridgestone).  *See id.* at *1.  The court dismissed the claim against BMW
with prejudice because plaintiff did not base the claim on BMW's warranty, which did not cover
tires anyway.  *Id.* at *4. As to Bridgestone, however, the court dismissed with leave to amend
because "it was conceivable" the plaintiff could allege a valid claim against Bridgestone based

on its tire warranty. *See id.* at *6. Hence, *Greene* contradicts Defendants' assertion that there must be a sale or lease contract between the parties to support an implied covenant claim.[9]

### 2. Plaintiffs Sufficiently Allege Bad Motive Or Intent

General allegations of malice, bad motive or intent are sufficient to support an implied covenant claim. *See Dewey*, 558 F. Supp. 2d at 531. Allegations that a defendant "fail[ed] to notify Plaintiff and Class Members of [a vehicle defect] … and fail[ed] to fully and properly repair this defect" during a warranty period also support an implied covenant claim. *Afzal v. BMW of N. Am., LLC*, 2016 WL 6126913, at *6 (D.N.J. Oct. 17, 2016).

The allegations of bad motive or intent are more than sufficient. As in *Afzal*, Plaintiffs here allege "Defendants have breached their duty of good faith and fair dealing by failing to notify Plaintiffs and class members of the Drain Valve Defect, and failing to fully and properly repair the defect, at no expense to Plaintiffs and class members." FAC ¶ 145. That allegation is bolstered by other allegations of Defendants' refusal to repair the defect during the warranty period or notify Class Members about the problem. Defendants refused warranty repairs with respect to Plaintiff Kettelkamp, and only provided ad hoc repairs to Plaintiff Crandell after she complained to the general manager of her dealership. *Id.* ¶¶ 16, 24. Other consumers have similarly complained that their "[d]ealer and VW America refused to honor [the] warranty." *Id.* ¶¶ 44-45. Plaintiffs also allege that instead of owning up to the problem, Defendants have a uniform policy of accusing Touareg owners who experience the Drain Valve Defect "of driving

---

[9] The other cases Defendants cite addressed inapposite facts, such as employment disputes, and simply stand for the proposition that an implied covenant claim depends upon the existence of a written contract. None addressed warranties, and none held that the implied covenant of good faith and fair dealing does not apply to warranties. *See Wade v. Kessler Inst.*, 172 N.J. 327, 798 A.2d 1251, 1262 (N.J. 2002); *Victorian v. Wells Fargo Home Mortg.*, 2017 WL 2535673 (E.D. Mo. June 12, 2017); *Luongo v. Vill. Supermarket, Inc.*, 261 F. Supp. 3d 520, 532 (D.N.J. 2017); *TCP Printing Co. LLC v. Enter. Bank & Trust*, 2017 WL 4357378 (E.D. Mo. Sept. 29, 2017).

through a lake or standing water." *Id.* ¶ 45; *see also* ¶¶ 16, 23 (describing accusations leveled at

Plaintiffs Crandell and Kettelkamp). The fact that Defendants issued a recall in China for the

Drain Valve Defect, but not here, further supports the bad motive element. *Id.* ¶¶ 6, 38-39, 46,

119. And there are allegations that Defendants' conduct is motivated by the desire to avoid

repair costs and reputational harm. *Id.* ¶ 132. On reply, Defendants will likely argue that these

allegations, whether viewed in isolation or together, are not enough to support a claim.

However, Plaintiffs are only required by Rule 8 to provide "short and plain" allegations

supporting their claims, and they have done more than that here.

Finally, Defendants' cases do not support dismissal. In *Merken* and *Block*, the courts

dismissed the implied covenant claims because the "Plaintiff[s] fail[ed] to provide any factual

support for [the] assertion" that the defendants acted in bad faith. *Merkin*, 2017 WL 5309623, at

\*6; *accord Block v. Jaguar Land Rover N. Am., LLC*, 2016 WL 3032682, at \*6 (D.N.J. May 26,

2016). *Reitz v. Nationstar Mortg., LLC*, 954 F. Supp. 2d 870, 892 (E.D. Mo. June 27, 2013), is

not instructive because the court never reached the issue of whether the plaintiff had adequately

alleged bad faith for purposes of the implied covenant claim.

## F. Plaintiffs State Omission-Based Fraud And Consumer Statutory Claims

### 1. Plaintiffs Sufficiently Allege Defendants' Pre-Sale Knowledge

Defendants' arguments that the allegations of their pre-sale knowledge are deficient

ignore the governing standard. Rule 9(b) provides that "[m]alice, intent, knowledge, and other

conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b) (emphasis added).

The heightened pleading standard does not apply. This rule makes sense because defendants

know more about their own knowledge and state of mind than anyone else. *See Weeks v. Google*

*LLC*, 2018 WL 3933398, at \*11 (N.D. Cal. Aug. 16, 2018) ("the Court is disinclined to find that

no duty existed, particularly because it is Google that knows if it knew about the defect, and

when it knew it."); 5A C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 1301 (4th ed.) ("A rigid rule requiring the detailed pleading of a condition of mind … would run counter to the general 'short and plain statement of the claim' mandate in Federal Rule of Civil Procedure 8(a) without the considerations that warrant a specificity requirement for allegations of fraud or mistake").

Hence, the only question is whether Plaintiffs have made plausible, "short and plain" allegations of pre-sale knowledge consistent with Rule 8. *See Marangos v. Swett*, 341 F. App'x 752, 757 (3d Cir. 2009) ("Rule 9(b) requires particularity when pleading fraud, but it allows factual matter concerning malice, intent, and knowledge, to be alleged generally under the less-than-rigid – though still operative – strictures of Rule 8."). On page 23 of their brief, Defendants set forth a long list of the types of allegations about their pre-sale knowledge that are found in the FAC, including allegations about testing, dealership data, customer complaints, and a recall in China over the same defect at issue here. *See* MTD at 23. The fact that it required nearly a *full page* of Defendants' brief to summarize those allegations underscores that Plaintiffs' allegations far exceed the "short and plain" statement required under Rule 8. *See id.*

Caselaw also supports the sufficiency of the allegations. In *Morcom*, 2017 WL 8784836, at *12, this Court held that a single paragraph alleging "Defendant had learned about the Imbalance Defects from consumer complaints early enough to issue the February 15, 2013 service bulletin" was enough to support pre-sale knowledge. In *Dewey*, 558 F. Supp. 2d at 524–25, the district court was satisfied where "the Complaint allege[d] that Defendants 'misrepresented that the car was free from defects at the time of purchase although they knew about the defects.'" And in *In re Volkswagen*, it was sufficient for the plaintiffs to allege Defendant VWGoA "'was monitoring warranty claims and Class Vehicle performance in the United States.'" 2017 WL 1902160, at *10 (quoting complaint). Those allegations were further

bolstered by customer complaints as well as allegations that "'Defendants' [collective] knowledge of Class Vehicle defects was derived from warranty claims, claims supervisors, customer complaints *and monitoring of performance of Class Vehicles by [Defendant] VW America quality assurance employees*.'" *Id.* at *4, *10 (emphasis in original).

Here, the allegations are far more detailed than those that passed muster in *Morcom* and *Dewey*; and many of the allegations here are similar to those in *In re Volkswagen Timing Chain*:

- "By as early as 2014, but no later than 2017, Defendants were aware (or should have been aware) of the premature failure of the Drain Valve Defect in the Class Vehicles based on pre-production testing, pre-production design failure mode analysis, production design failure mode analysis, early consumer complaints made to Defendants' network of exclusive dealers, aggregate service records compiled from those dealers, aggregate warranty data compiled from those dealers, repair order and parts data received from the dealers, consumer complaints to dealers and the National Highway Traffic Safety Administration ("NHTSA"), testing performed in response to consumer complaints. Defendants nonetheless continued to sell the Class Vehicles while fraudulently concealing the defect and safety risk from Plaintiffs and Class members." FAC ¶ 37; *see also Persad v. Ford Motor Co.*, 2018 WL 3428690, at *3 (E.D. Mich. July 16, 2018) (holding similar allegations supported denial of motion to dismiss).

- "Knowledge of the Drain Valve Defect is imputed to all Defendants because VW USA was monitoring warranty claims and Class Vehicle performance in the United States, and reporting back to its affiliated and parent company located in Germany.  In addition, the parent company monitored claims and performance of the Class Vehicles in other countries such as China." *Id.* at ¶ 40.

*See also*, *e.g.*, FAC ¶ 31 (alleging VWGoA "monitor[ed] performance of VW vehicles in the United States"); *id.* ¶ 33 (alleging authorized dealers and service providers acted as Defendants agents when "monitoring the performance of VW vehicles in the United States"); *id.* ¶ 41 (alleging Defendants monitor consumer complaints to NHTSA "as part of a continuous obligation to identify potential defects in their vehicles"); *id.* ¶ 44 (alleging Defendants monitor consumer complaints on ClubTouareg.com); ¶ 132 (alleging Defendants knew that disclosure of the Drain Valve Defect would have adverse economic and reputational consequences); *id.* ¶¶ 96, 103, 109, 121, 139, 156, 169 (alleging knowledge generally).

Apart from ignoring the governing standard, Defendants' arguments for dismissal fail on other grounds as well.  Defendants seek dismissal by scrutinizing various allegations in isolation, such as those about complaints or the China recall, and then claiming they are insufficient.  *See* MTD at 23-27.  That tactic cannot support dismissal because on a motion to dismiss, "the court's job is not to scrutinize each allegation in isolation but to assess all of the allegations holistically." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2511 (2007).  All the allegations in the FAC, taken together, support a plausible inference of Defendants' knowledge.  Relatedly, most of Defendants' authorities are distinguishable because unlike here, the plaintiffs largely relied on sparse allegation without factual elaboration.  *See, e.g.*, *Gotthelf v. Toyota Motor Sales, U.S.A., Inc.*, 525 Fed. App'x 94, 104 n.16 (3d Cir. 2013) ("Nothing in the Complaint provides factual support for Toyota's alleged knowledge and concealment of the defect"); *Greene v. BMW of N. Am.*, 2012 WL 5986457, at *5 (D.N.J. Nov. 28, 2012) (describing allegations).

With respect to allegations of consumer complaints on the internet and to NHTSA, Defendants respond by disclaiming any affiliation with ClubToaureg.com and denying they received the NHTSA complaints.  MTD at 25.  Defendants' disclaimers and denials are factual arguments outside the pleadings, and therefore do not support dismissal.  The arguments also are irrelevant.  Paragraph 44 of the FAC specifically alleges that Defendants monitor consumer complaints, and *why* they do so.  FAC ¶¶ 41, 44.  Defendants' own authority distinguished mere allegations of the existence of complaints (which might not support an allegation of knowledge), from allegations that the defendant *monitors* such complaints (which do support allegations of knowledge).  *See Granillo v. FCA US LLC*, 2016 WL 94505772, at *9 (D.N.J. Aug. 29, 2016) ("Plaintiffs have not alleged that Defendant tracked, or was even aware of, complaints posted to the cited third-party websites.  Courts in this district have repeatedly found that consumer

complaints on third-party websites are not sufficient to infer a manufacturer's knowledge of a product defect where [unlike here] there are no allegations that the manufacturer saw such complaints."). Those allegations are present here. FAC ¶¶ 41, 44; *see also id.* ¶¶ 31, 33.

Defendants' arguments concerning the China Recall also lack merit. Citing no authority, Defendants argue that Plaintiffs are required to plead that the cars sold in China have "the exact same design, vis-à-vis the drainage and air intake systems" as cars sold in the U.S. MTD at 26. There is no such requirement. At the motion to dismiss stage, the court is required "to accept all allegations of fact as true and draw all reasonable inferences in [Plaintiff's] favor." *Vision Pharma, LLC v. Sunrise Pharm., Inc.*, 2018 WL 3085213, at *7 (D.N.J. June 20, 2018) (Cecchi, J.). The allegations are more than enough to support an inference that customers in the United States are experiencing the same or substantially the same defect that customers experienced in China. *See* FAC ¶¶ 6, 38, 40, 43 (bullet #2), 46, 119.

### 2.     Plaintiffs Crandell And Ontiveros Sufficiently Allege A Duty to Disclose

Defendants ask the Court to dismiss the common law fraud claims of Crandell (a New Jersey plaintiff) and Ontiveros (a Texas plaintiff) based on the theory that they have no duty to disclose dangerous defects in their vehicles.[10] MTD at 27-29. That is a remarkable position for an automobile manufacturer to take in open court. It also is contrary to the law. In *In re Volkswagen*, Judge Linares rejected the same argument with respect to both Texas and New Jersey plaintiffs in that case. *See* 2017 WL 1902160, at *19–20.

---

[10] Defendants do not argue that they lacked a duty to disclose with respect to Plaintiff Kettelkamp. *See* MTD at 27-29. They also do not argue that they lacked a duty to disclose with respect to the claims for violations of the New Jersey and Texas consumer statutes. They cannot raise those arguments for the first time on reply. *Nataragjan v. CLS Bank Intern.*, 2014 WL 1745024 at *2 n.4 (D.N.J. Apr. 30, 2014) (Cecchi, J.) ("arguments raised for the first time in defendant's reply brief will be disregarded") (internal quotation omitted).

As to the Texas plaintiff in *In re Volkswagen*, the court explained that under Texas law, Defendant VWGoA "owed a duty to disclose safety defects."  *Id.* at *20; *see also McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368–69 (N.D. Ga. 2013) (sustaining fraud by omission claim under Texas law and imposing a duty to disclose safety defects).  Moreover, the proposition that a duty to disclose arises only where there is a special or fiduciary relationship has been squarely rejected by the Texas court of appeals.  *See White v. Zhou Pei*, 452 S.W.3d 527 (Tx. App. 2014) (rejecting the same argument Defendants make here, explaining, "a [confidential or fiduciary] relationship is but one of the situations under which the duty [to disclose] may arise."); *see also Paquin v. Ins. Co. of the State of Pa.*, 2016 WL 1322479, at *8 n.8 (W.D. La. Apr. 1, 2016) (surveying Texas law, including *White*, and rejecting the same argument Defendant makes here).  The contrary opinions cited by Defendants did not take *White* and similar authorities into account, and thus do not correctly state Texas law.  *See, e.g., Adams*, 018 WL 2338871 at *5.

Here, the FAC alleges that the Drain Valve Defect "presents a significant safety risk for Plaintiffs and Class members because when the Drain Valve Defect manifests itself, the Class Vehicles lose engine power, which causes a loss in the ability to accelerate, maintain speed, and/or adequately control the steering wheel or fully engage the brakes."  FAC ¶ 3; *see also e.g., id.* ¶¶ 25-26, 35, 37-38, 39, 46 (alleging safety risks associated with the Drain Valve Defect).  In fact, that is what happened to two of the Plaintiffs in this case. *Id.* ¶¶ 14-16, 23.  Hence, as in *In re Volkswagen*, the Court should reject Defendants' position that they had no duty to disclose the Drain Valve Defect to Texas Plaintiff Ontiveros.

Defendants' arguments are equally meritless with respect to the New Jersey Plaintiff Crandell.  In *In re Volkswagen*, the court first explained that "New Jersey law imposes a duty to

disclose when a defendant has made a partial disclosure." *In re Volkswagen*, 2017 WL 1902160, at *20. The court then held that partial disclosures in maintenance schedules identifying certain parts and components that needed routine maintenance or replacement but omitting any reference to the defective timing chain at issue supported a duty to disclose.

Here, the FAC contains similar allegations. Specifically, Plaintiffs allege that they and class members relied upon material omissions concerning the "recommended Class Vehicle maintenance program." FAC ¶ 61. Similar to *In re Volkswagen*, Plaintiffs further allege that the owner's manual and the USA Warranty and Maintenance manuals included partial representations suggesting that "the air intake system was a non-maintenance engine component not subject to inspection and predetermined intervals." *Id.* ¶ 62. "The only components of the air intake system in the Class Vehicles that are subject to maintenance – let alone a visual inspection – at predetermined intervals are the 'air filter element and snow screen,' which are scheduled to be replaced every 60,000 miles." *Id.* Prior to the 60,000-mile service, owners would have no reason to inspect the air intake systems, drain vales or air filters of the Class Vehicles. *Id.*; *see also id.* ¶ 96 (alleging that maintenance pamphlets omitted "inspection and service intervals for the Drain Valve Defect even though Defendants knew these components were defective and required periodic inspection and service"). Under *In re Volkswagen*, these allegations support denial of the motion to dismiss New Jersey Plaintiff Crandell's fraud claims.

### 3. Defendants' Arguments Concerning The Fraud And Statutory Claims Of Specific Plaintiffs Lack Merit

#### a) Plaintiff Ontiveros

Relying primarily on *Everett v. TK-Taito, LLC*, 178 S.W.3d 844 (Tex. App. 2005), Defendants argue that Plaintiff Ontiveros' common law and statutory fraud claims must be dismissed because he has not yet experienced the Drain Valve Defect. MTD at 29. As another

court explained when rejecting the same argument based on *Everett* and other cases, "[Defendant] overstates the reach of these cases." *Doyle v. Chrysler Grp. LLC*, 2014 WL 1910628, at *9 (C.D. Cal. Jan. 29, 2014).[11]

The *Everett* court "expressly limited its holding by stating: 'We do not hold that a consumer may never possess standing to bring suit under the DTPA for benefit-of-the-bargain damages based on an unmanifested product defect.'" *Id.* (quoting *Everett*, 178 S.W.3d at 858 n.14). The dispositive fact in *Everette* was that the "allegedly defective seat belt had functioned as promised for <u>over ten years</u>," and there was too "remote a chance of manifestation of a defect." *Doyle*, 2014 WL 1910628, at *10 (explaining *Everett*) (emphasis added). Another case cited by Defendants, *In re GM Ignition*, 257 F. Supp. 3d at 451, acknowledged that *Everett* "[left] open the possibility of standing for plaintiffs" who did not experience a defect, "depending on how long they have or had used their vehicles absent any defect." In *In re GM Ignition*, most of the Texas plaintiffs whose claims were dismissed had cars that were six to eight years old when they commenced their lawsuit. *See id.* at 393 (describing model years of the three Texas plaintiffs whose claims were dismissed).

In short, Defendants' own authorities contradict their argument for dismissal. The issue under *Everett* and *Doyle* is whether the plaintiffs face only a "remote" or theoretical risk of experiencing the defect. *See Doyle*, 2014 WL 1910628, at *10 (explaining *Everett*). Here, the allegations in the FAC do not permit an inference that Plaintiff Ontiveros faces only a "remote" risk of experiencing the Drain Valve Defect. Unlike in *Everett*, Plaintiff Ontiveros owned his car for a little more than three years before commencing this lawsuit, not ten years. Both of his co-

---

[11] For the reasons discussed above, it is premature to determine whether Plaintiff Ontiveros can sustain an NJCFA claim.

plaintiffs experienced the defect – and one of them experienced it *twice*.  FAC ¶¶ 15-16, 23.

Numerous Touareg owners across the country have complained about the same defect.  *Id.* ¶¶ 43-

45.  The FAC also alleges that Plaintiff Ontiveros cannot do basic things like "drive or park [his]

Class Vehicle[] in the rain, or use a car wash, without materially increasing the risk of ingesting

water into the engine …."  *Id.* ¶ 4.  These allegations make this case more like *Doyle* than

*Everett*.  The Court should reject Defendants' arguments.

### b)    Plaintiff Crandell

Defendants argue Plaintiff Crandell's claims for common law fraud and violations of the

NJCFA must be dismissed because "her vehicle was repaired at no charge to her."  MTD at 33.

In Defendants' view, "[Crandell's] subjective conclusory opinion that the repair was unreliable

has no basis in pleaded fact."  *Id.* at 31.  Defendants, however, are simply ignoring allegations

that contradict their position.  The FAC alleges that the dealer first accused Plaintiff Crandell of

driving through a lake of water, then demanded over $600 for repairs.  FAC ¶ 16.  The

reasonable inference is that they did not come close to performing $600 worth of repairs.  After

demanding this hefty bill, they simply "clear[ed] and trimm[ed] the [the defective] drain valve,"

without prior "test[ing] of this ad hoc measure, and without "a Technical Service Bulletin

approving of those measures."  *Id.* ¶ 17.  The purported "repair" also was not done "pursuant to

a recall or service campaign for the Class Vehicles initiated by Defendants."  *Id.*  Plaintiff

Crandell also alleges she "would not have leased the Touareg, or would not have leased it on the

same terms, had Defendants disclosed … that they would resort to ad hoc and unreliable methods

for addressing the defect when it manifested."  *Id.*  Hence, Defendants have no legal basis to

argue that their ad hoc repairs eliminated any damages caused by their fraudulent omissions.

These allegations distinguish this case from the cases cited by Defendants, where the

defendants replaced the defective parts or otherwise performed repairs pursuant to Technical

Service Bulletins rather than relying on ad hoc and unapproved design modifications.  *See Thiedemann v. Mercedes-Benz USA, LLC*, 872 A.2d 783, 790, 793 (2005) (describing the use of replacement parts); *Chan v. Daimler*, 2012 WL 5827448, at *3 (D.N.J. Nov. 9, 2012) (same); *Granillo*, 2016 WL 9405772 at *4 (describing "software upgrades outlined by the TSB's issued by Defendant").[12]  The fact that Crandell would not have leased her vehicle, or would not have leased it on similar terms, had she known that Defendants would rely on untested and unapproved measures to address the Drain Valve Defect furnishes further support for her ascertainable loss.  *See Chernus v. Logitech, Inc.*, 2018 WL 1981481, at *13 (D.N.J. Apr. 27, 2018) (ascertainable loss requirement met where plaintiffs alleged "consumers purchased Logitech Alert System[s] they would not have otherwise purchased, [and] paid more for Logitech Alert Systems then they would have otherwise paid").

### c)   Plaintiff Kettelkamp

Defendants argue that Plaintiff Kettelkamp's common law fraud (but <u>not</u> statutory claim) is barred under the economic loss doctrine "because it is substantially redundant with warranty claims."  MTD at 34.  Once again, however, that argument does not apply to the parent company VWAG because Defendants deny that VWAG provided any warranty.  MTD at 5.  Moreover, Defendants fail to disclose that the *only* decision they cite, *Flynn*, was distinguished in another recent car defect case involving VWGoA, *Wilson v. Volkswagen Grp. Of Am., Inc.*, 2018 WL 4623539, at *11 (S.D. Fla. Sept. 26, 2016).  Like here, *Wilson* involved a putative class action

---

[12] Other cases cited by Defendants are inapposite.  In *Mickens v. Ford Motor Co.*, 2015 WL 5310755, at *13 (D.N.J. Sept. 10, 2015), the issue was not ineffective repairs per se, but instead the fact that the plaintiff declined the defendant's offer to repair his car because he did not believe the repairs would be effective.  That is not the fact pattern presented here.  The other two cases cited by Defendants *Ciser v. Nestle Water N. Am., Inc.*, 596 Fed. App'x 157, 160 (3d Cir. 2015), and *Columbus LTACH Mgmt., LLC v. Quantum LTACH Holdings, LLC*, 2018 WL 2455922 (D.N.J. May 31, 2018), did not address facts remotely similar to those presented here.

alleging undisclosed defects in Defendants' cars.  *See id.* at *1.  Like here, Defendant VWGoA cited *Flynn* and argued that the common law fraud claims of a Missouri-based plaintiff were bared by the economic loss doctrine.  *Id.* at *11.  The court rejected that argument, explaining that fraudulent omission claims "are certainly not coextensive with the Plaintiff's warranty claims" because they "concern VW's alleged intentional misrepresentations or concealments of known defects of the goods sold."  *Id.*

 *Anderson v. Ford Motor Co.*, 2017 WL 6733972, at *5 (W.D. Mo. Dec. 29, 2017), similarly concluded that *Flynn* was inapplicable because "'claims based on misrepresentation or fraud are distinct from and contain different elements than claims grounded on breach of warranty or contract,' but 'under Missouri law the same set of operative facts may give rise to different causes of action.'"  *Id.* (quoting *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818 (8th Cir. 1983)).  Hence, because the plaintiff in *Anderson* alleged a fraudulent omission claim (as Plaintiff Kettelkamp does here), the court rejected the same argument Defendants make here.  *See id.*

## III. CONCLUSION

 For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety. If the Court determines that the pleadings are deficient in any respect, Plaintiffs request leave to amend to cure any such deficiencies.  *See Feuerstein v. Simpson*, 582 Fed. App'x. 93, 98 (3rd Cir. 2014) ("In general, Rule 15 should be interpreted liberally, in favor of permitting amendment whenever doing so will serve the underlying purposes of the Rule").

Dated: March 26, 2019

Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____*/s/ Frederick J. Klorczyk III*_____
        Frederick J. Klorczyk III

Joel D. Smith (*pro hac vice*)
Frederick J. Klorczyk III
1990 North California Blvd., Suite 940
Walnut Creek, CA  94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email:  jsmith@bursor.com
        fklorczyk@bursor.com

*Attorneys for Plaintiffs*