**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JODI CRANDELL, JUAN ONTIVEROS and JIM KETTELKAMP, ABRAHAM LITCHFIELD, and JOSE SUAREZ, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC. and VOLKSWAGEN AKTIENGESELLSCHAFT,<br><br>Defendants. | Civil Action No.: 18-cv-13377-CCC-MF<br><br>**ELECTRONICALLY FILED** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR**
**PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

**BURSOR & FISHER, P.A.**

Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**

Joel D. Smith (*pro hac vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: jsmith@bursor.com

*Attorneys for Plaintiffs and the*
*Proposed Settlement Class*

**TABLE OF CONTENTS**

**PAGE(S)**

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.   PROCEDURAL HISTORY OF THE CASE ................................................................. 3

III.  THE SETTLEMENT TERMS ARE FAIR, REASONABLE AND ADEQUATE............ 5

    A.    THE BENEFITS TO THE CLASS UNDER THE SETTLEMENT ................................. 6

    B.    NOTICE TO THE SETTLEMENT CLASS.................................................................. 8

IV.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT ............ 10

    A.    THE STANDARD FOR PRELIMINARY APPROVAL OF A SETTLEMENT CLASS ................................................................................................................... 10

    B.    THE SETTLEMENT FOLLOWED ARM'S-LENGTH NEGOTIATIONS CONDUCTED IN GOOD FAITH BY WELL-INFORMED AND EXPERIENCED COUNSEL ................................................................................................................ 11

    C.    THE RELIEF PROVIDED TO THE CLASS IS ADEQUATE GIVEN THE COSTS, RISKS, AND DELAY OF TRIAL AND APPEAL ......................................................... 12

    D.    THE PROPOSED METHOD OF DISTRIBUTING RELIEF TO THE CLASS, INCLUDING THE METHOD OF PROCESSING CLASS-MEMBER CLAIMS IS EFFICIENT AND EFFECTIVE AND TREATS CLASS MEMBERS EQUALLY ....... 14

    E.    THE TERMS RELATED TO ATTORNEY'S FEES, TIMING OF PAYMENT, AND CLASS REPRESENTATIVE INCENTIVE AWARDS ................................................. 15

V.    THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ....................... 16

    A.    NUMEROSITY ....................................................................................................... 16

    B.    COMMONALITY ................................................................................................... 16

    C.    TYPICALITY .......................................................................................................... 17

    D.    ADEQUACY OF REPRESENTATION ...................................................................... 17

    E.    THE REQUIREMENTS OF RULE 23(b)(3) ARE SATISFIED ................................... 18

VI.   THE FORM AND MANNER OF NOTICE SHOULD BE APPROVED ....................... 20

VII.  CONCLUSION...................................................................................................... 21

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alves v. Main*,
   2012 WL 6043272 (D.N.J. Dec. 4, 2013) ................................................................ 12

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997) ............................................................................................. 16, 18

*Baby Neal v. Casey*,
   43 F.3d 48 (3d Cir. 1994) ..................................................................................... 16, 17

*Bell Atlantic v. Bolger*,
   2 F.3d 1304 (3d Cir. 1993) ......................................................................................... 10

*Bradburn Parent Teacher Store, Inc. v. 3M*,
   513 F. Supp. 2d 322 (E.D. Pa. 2007) ......................................................................... 21

*Chiang v. Veneman*,
   385 F.3d 256 (3d Cir. 2004) ....................................................................................... 16

*Coleman v. Commonwealth Land Title Ins. Co.*,
   318 F.R.D. 275 (E.D. Pa. 2016) ................................................................................. 19

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010) ....................................................................................... 10

*Georgine v. Amchem Products, Inc.*,
   83 F.3d 610 (3d Cir. 1996) ......................................................................................... 17

*Glaberson v. Comcast Corp.*,
   2014 WL 7008539 (E.D. Pa. Dec. 12, 2014) ............................................................. 12

*In re Baldwin-United Corp.*,
   105 F.R.D. 475 (S.D.N.Y. 1984) ............................................................................... 16

*In re Community Bank of N. Va.*,
   418 F.3d 277 (3d Cir. 2005) ....................................................................................... 18

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995) ......................................................................................... 17

*In re Mercedes-Benz Antitrust Litig.*,
   213 F.R.D. 180 (D.N.J. 2003) ............................................................................... 18, 19

ii

*In re Pet Food Prod. Liab. Litig.*,
 629 F.3d 333 (3d Cir. 2010)................................................................................ 10

*In re Prudential Ins. Co. v. America Sales Litigation*,
 148 F.3d 283 (3d Cir. 1998)........................................................................ passim

*In re Warfarin Sodium Antitrust Litig.*,
 391 F.3d 516 (3d Cir. 2004).......................................................................... 10, 19

*Ins. Brokerage Antitrust Litig.*,
 2007 WL 2589950 (D.N.J. 2007)........................................................................ 16

*Phillips Petroleum Co. v. Shutts*,
 472 U.S. 797 (1985) ........................................................................................... 20

*Rudel Corp. v. Heartland Payment Sys., Inc.*,
 2017 WL 4422416 (D.N.J. Oct. 4, 2017)............................................................ 11

*Stewart v. Abraham*,
 275 F.3d 220 (3d Cir. 2001)................................................................................ 16

*Sullivan v. DB Invs., Inc.*,
 667 F.3d 273 (3d Cir. 2011)................................................................................ 18

*Udeen v. Subaru of Am., Inc.*,
 2019 WL 4894568 (D.N.J. Oct. 4, 2019).............................................................11

*Zinberg v. Washington Bancorp, Inc.*,
 138 F.R.D. 397 (D.N.J. 1990) ............................................................................. 16

**STATUTES**

15 U.S.C. § 2310(d)(1) .......................................................................................... 4

N.J.S.A. § 56:8-2.................................................................................................... 4

Tex. Bus. & Com. Code Ann. § 17.46(b) .............................................................. 4

Va. Code Ann. § 59.1-200(A)................................................................................ 4

**RULES**

Fed. R. Civ. P. 23......................................................................................... 1, 16, 20

Fed. R. Civ. P. 23(a) .......................................................................................16, 20

Fed. R. Civ. P. 23(a)(1)........................................................................................ 16

Fed. R. Civ. P. 23(a)(2)........................................................................................ 16

iii

Fed. R. Civ. P. 23(a)(3)...................................................................................................... 17

Fed. R. Civ. P. 23(b)(3).............................................................................. 16, 20, 18, 19, 21

Fed. R. Civ. P. 23(c) ......................................................................................................... 21

Fed. R. Civ. P. 23(c)(3)...................................................................................................... 21

Fed. R. Civ. P. 23(e) .................................................................................................... 11, 20

Fed. R. Civ. P. 23(e)(1)(B) ............................................................................................... 11

Fed. R. Civ. P.23(e)(2).................................................................................................... 11

## OTHER AUTHORITIES

Newberg at § 13:64........................................................................................................... 16

Uniform Commercial Code § 2-313 ................................................................................... 4

Uniform Commercial Code § 2-314 ................................................................................... 4

## I.    PRELIMINARY STATEMENT

This brief is submitted in support of the unopposed motion for preliminary approval of a class action Settlement Agreement (the "Settlement" or "Agreement"[1]) between Plaintiffs Jodi Crandell, Juan Ontiveros, Jim Kettelkamp, Abraham Litchfield, and Jose Suarez (herein "Plaintiffs" or "Class Representatives") and Defendants Volkswagen Group of America, Inc. and Volkswagen Aktiengesellschaft (collectively, "Defendants").  As described below, this Settlement includes both a service action and reimbursement as benefits of the Settlement.

The Settlement satisfies the requirements of Fed. R. Civ. P. 23 and is fair, reasonable, and adequate.  Consequently, the Court should grant this motion, preliminarily approve the Settlement, approve the form of Notice and the notice program, preliminarily approve the Settlement Class representatives, Settlement Class Counsel and the Settlement Claims Administrator, and set the schedule for a Final Approval Hearing.  A copy of the Agreement is annexed to the Declaration of Frederick J. Klorczyk III ("Klorczyk Declaration") as Exhibit 1.

The underlying litigation arises from Defendants' sale of model year 2015, 2016 and 2017 Volkswagen Touareg vehicles (herein "Touaregs" or "Class Vehicles").  Specifically, Plaintiffs allege the Touaregs were equipped with drain valves that do not allow water to drain properly from the engine compartment, which allows water to collect in the bottom of the Touaregs' air boxes, thereby damaging the vehicles' air filters or, worse, becoming ingested into the Touaregs' engines and causing sudden engine failure (the "Drain Valve Defect"). Defendants deny the existence of any defect and maintain that the vehicles and their Drain Valves were properly designed, manufactured, marketed and sold, and that no warranties have been breached

---

[1] Unless otherwise defined herein, all capitalized terms have the meaning ascribed to them in the Agreement.

1

nor statutes or laws violated.  Therefore, this is an arm's length Settlement of highly disputed claims.

The Settlement addresses the alleged conduct complained of in the class action complaint and provides valuable benefits to the owners and lessees (putative Class Members) of approximately 17,343 Settlement Class Vehicles in the United States.  The Settlement contains two benefit components.

First, there is a service action available to the Settlement Class Vehicles, that will enable a present owner or lessee of a Settlement Class Vehicle to have the Drain Valve removed from said vehicle by an authorized Volkswagen dealer, free of charge.  Settlement Class Members who presently own or lease a Settlement Class Vehicle will have one year from the Notice Date, or the first date the U.S. service action becomes available, whichever is later, to have said service action performed on their vehicle.  Additionally, a new air filter will be installed if necessary – such as if the air filer is wet, saturated, or there are other signs of water damage – free of charge in each Settlement Class Vehicle in connection with the service action.

Second, there is a reimbursement program available to Class Members who, prior to the date of the class notice ("Notice Date"), have incurred eligible out-of-pocket expenses for the repair of water ingress damage to the air intake system, air filter, engine, turbocharger, or intercooler of a Settlement Class Vehicle that was caused by a clogged Drain Valve.  The Settlement Class Member will be entitled to submit a claim, pursuant to the applicable deadline and requirements, for a reimbursement of seventy-five percent (75%) of the Settlement Class Member's paid out-of-pocket expenses for said repairs (parts and labor) by an authorized Volkswagen dealer, limited to one repair per Settlement Class Vehicle.  If the repair was performed by a service center or facility that is not an authorized Volkswagen dealer, the

Settlement Class Member will be entitled to submit a claim, pursuant to the applicable deadline and requirements, for a reimbursement of seventy-five percent (75%) of the same eligible out-of-pocket expenses, subject to a $9,909.00 maximum invoice cost amount and limited to one repair per Settlement Class Vehicle.  Thus, for example, if the amount of the paid repair invoice cost of an eligible repair was less than $9,909.00, the Settlement Class Member will be entitled to submit a claim for a reimbursement of seventy-five percent (75%) of that amount.  If, however, the amount of the paid repair invoice cost of an eligible repair was equal to or exceeded $9,909.00, then the Settlement Class Member will be entitled to submit a claim for reimbursement of seventy-five percent (75%) of $9,909.00.  Further details of this program are discussed below.

Additionally, Defendants will pay the costs of notice to the Class and for administration of claims.  Pursuant to the Agreement, Settlement Class Counsel may apply for an award of reasonable attorney's fees, costs, and expenses of no more than $775,000 total.  In addition, the Parties have agreed that the Settlement Class Representatives may each apply for a class representative service award of not more than $5,000, to be paid by Defendants.  The Class Counsel fees and expenses and Settlement Class Representative service awards were not negotiated until after the Parties had reached agreement on the material terms of this Settlement.

Accordingly, the proposed Settlement provides valuable relief to the Class and should be approved.

## II.    PROCEDURAL HISTORY OF THE CASE

On August 29, 2018, after months of pre-suit investigation, speaking with potential class members, and ascertaining the nature of the alleged Class Vehicle defects, Plaintiffs Jodi Crandell and Juan Ontiveros filed the initial class action complaint against Defendants in the

3

U.S. District Court for the District of New Jersey.  The individual Complaint counts included: Count I: Breach of Uniform Commercial Code § 2-313: Express Warranty; Count II: Breach of Uniform Commercial Code § 2-314; Count III: Violation of Magnuson-Moss Warranty Act, 15 U.S.C. § 2310(d)(1); Count IV: Unjust Enrichment; Count V: Violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2; Count VI: Violation of the Texas Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.46(b); Count VII: Violation of the Virginia Consumer Protection Act, Va. Code Ann. § 59.1-200(A); Count VIII: Fraud; and Count IX: Negligent Misrepresentation.

On December 31, 2018, Plaintiffs filed their First Amended Complaint, adding Jim Kettelkamp as an additional Plaintiff and substituting in claims for Breach of the Implied Covenant of Good Faith and Fair Dealing in place of the claim for Violation of the Virginia Consumer Protection Act.  Defendants filed a motion to dismiss, which has been fully briefed but not yet resolved by the Court.  *See* Dkt. Nos. 17-19.

On January 15, 2020, the Court set an in-person settlement conference before Magistrate Judge Falk.  After hearing the Parties' respective positions, Judge Falk encouraged the Parties to attempt to negotiate a mutually agreeable class settlement.  The parties engaged in extensive, vigorous discussions and arm's-length negotiations together with numerous exchanges of information and settlement proposals.  The parties also engaged the services of Bradley A. Winters, an experienced and well-respected JAMS mediator, and participated in a full day of mediation on January 14, 2021.  Consequently, the parties were able to reach an agreement to resolve the case on a class-wide basis.  Counsel for the parties did not discuss the appropriateness or amount of any application by Class Counsel for an award of attorney's fees and expenses until the substantive terms of the Settlement had been negotiated at arm's-length

4

and agreed upon.  A term sheet was executed by the parties setting forth the substantive terms of the Settlement.

In addition, between June 9, 2020 and January 22, 2021, the parties attended conferences before this Court on six occasions, including on June 9, 2020, August 4, 2020, October 20, 2020, November 19, 2020, December 11, 2020, and January 22, 2021.  During these conferences, counsel apprised the Court of the status of the matter and of settlement discussions.

On May 25, 2020, pursuant to a stipulation and order from the Court, Plaintiffs filed a Second Amended Complaint, which was identical in all material respects to the First Amended Complaint, except that it added Abraham Litchfield and Jose Suarez as named plaintiffs and revised the putative class definition in accordance with information exchanged by the Parties in discovery.

## III.    THE SETTLEMENT TERMS ARE FAIR, REASONABLE AND ADEQUATE AND SHOULD PRELIMINARILY BE APPROVED

The Settlement Class herein is defined as follows:

All persons and entities that purchased or leased any model year 2015-2017 Volkswagen Touareg vehicle imported and distributed by Volkswagen Group of America, Inc. in the United States and Puerto Rico.

Excluded from the Settlement Class are (a) all Judges who have presided over the Action and their spouses; (b) all current employees, officers, directors, agents and representatives of Defendants, and their family members; (c) any affiliate, parent or subsidiary of Defendants and any entity in which Defendants has a controlling interest; (d) anyone acting as a used car dealer; (e) anyone who purchased a Settlement Class Vehicle for the purpose of commercial resale; (f) anyone who purchased a Settlement Class Vehicle with salvaged title and/or any insurance company who acquired a Settlement Class Vehicle as a result of a total loss; (g) any insurer of a Settlement Class Vehicle; (i) issuers of extended vehicle warranties and service contracts; (i) any Settlement Class Member who, prior to the date of the Settlement Agreement, settled with and released Defendants or any Released Parties from any Released Claims; and (j) any Settlement Class Member who files a timely and proper Request for Exclusion from the Settlement Class.

//

5

### A.    THE BENEFITS TO THE CLASS UNDER THE SETTLEMENT

Under the Settlement terms, VWGoA will issue a service action whereby present owners or lessees of a Settlement Class Vehicle may bring their vehicles to an authorized Volkswagen dealer to have the Drain Valve removed from said vehicles free of charge.  Settlement Class Members who presently own or lease a Settlement Class Vehicle will have one year from the Notice Date, or the first date the U.S. service action becomes available, whichever is later, to have said service action performed on their vehicle.  Additionally, a new air filter will be installed if necessary – such as if the air filer is wet, saturated, or there are other signs of water damage – free of charge in each Settlement Class Vehicle in connection with the service action.

Additionally, there is a reimbursement program available to Class Members who, prior to the Notice Date, have incurred eligible out-of-pocket expenses for the repair of water ingress damage to the air intake system, air filter, engine, turbocharger, or intercooler of a Settlement Class Vehicle that was caused by a clogged Drain Valve.  The Settlement Class Member will be entitled to submit a claim, pursuant to the applicable deadline and requirements, for a reimbursement of seventy-five percent (75%) of the Settlement Class Member's paid out-of-pocket expenses for said repairs (parts and labor) limited to one repair per Settlement Class Vehicle.

The reimbursement program is subject to the following limitations.  First, any reimbursement shall be limited to actual out-of-pocket expenses that have not already been reimbursed by Defendants, an authorized Volkswagen dealer, an insurer, providers of extended warranties, or any other third-party entity who paid for all or some of the expenses.  Second, if a repair for covered engine damage was performed by an independent service center and not an authorized Volkswagen dealer, the Settlement Class Member shall be entitled to receive a

6

reimbursement of seventy-five percent (75%) of the total costs limited to a maximum of $9,909. Thus, for example, if the amount of the repair invoice exceeds $9,909, the Settlement Class Member shall be entitled to receive a reimbursement of seventy-five percent (75%) of $9,909. Third, Defendants shall not be responsible for, and shall not warrant, repair/replacement work performed by any entity other than an authorized Volkswagen dealer.  Fourth, damages resulting from abuse, altercation or modification, a collision or crash, vandalism, and/or other extraneous causes shall not be eligible for reimbursement.

With regards to required proof, Settlement Class Members must provide a properly completed claim form, signed under penalty of perjury and accompanied by appropriate documentary proof consisting of repair invoice(s) and other documents that contain information such as: the Settlement Class Member's name, and the make, model and vehicle identification number of the Settlement Class Vehicle; the name and address of the authorized Volkswagen dealer or independent service center that performed the repair; the date of the repair; description of the repair, including the parts repaired or replaced; the mileage of the Settlement Class Vehicle at the time of repair; that the damage to the air intake system, air filter, engine, turbocharger, or intercooler that required the repair/replacement was due to water ingress to the air intake caused by a clogged Drain Valve, the cost of repair, including parts and labor; and proof of the Settlement Class Members' payment of the same.

Defendants shall encourage their authorized dealers to cooperate with Class Members' reasonable requests to obtain copies of existing repair records to the extent a covered repair was performed by the dealer and the records are readily available.  Disputes as to the sufficiency of documentation verifying the reimbursement claim shall be submitted to and resolved by the Claims Administrator, Angeion Group.

These Settlement benefits serve as consideration for the dismissal of this Action against Defendants, and the release of all claims by Plaintiffs and Settlement Class Members which takes effect on the Effective Date defined as the latest of the following dates:  (1) five business days after the time for appeal from the Final Order and Judgment approving the Settlement (in the form and content that the parties jointly proposed) has elapsed without any appeals being filed; or (2) the first business day after the date on which all appeals from the Final Order and Judgment approving this Settlement (including appeals for any appellate court decisions affirming said Final Order and Judgment) have been fully exhausted, and no further appeal may be taken.

**B.      NOTICE TO THE SETTLEMENT CLASS**

The parties negotiated and agreed upon a notice program that provides the best practicable notice under the circumstances.  The Claim Administrator has been agreed upon by the parties and will be paid for by Defendants.  Within the appropriate deadline after the Court grants preliminary approval of the Settlement, the Claim Administrator will provide Class Action Fairness Act ("CAFA") notice to the United States Attorney General and state Attorneys General to the extent required by law.

After the Court preliminarily approves the Settlement, the Claim Administrator will, with the participation of counsel, establish and maintain a dedicated website regarding the Settlement, which will include copies of the Settlement Agreement, Class Notice, claim form and pertinent Settlement-related motions and orders; applicable deadlines for objecting, opting out, and mailing of claims; the date, place, and time of the final fairness hearing; and contact information for any questions relating to the Settlement.  The website will be operational on the Notice Date.

After the Court preliminarily approves the Settlement, the Claim Administrator shall, for purposes of identifying Settlement Class Members, obtain from Polk/IHS Markit the names and current or last known addresses of Settlement Class Vehicle owners and lessees that can reasonably be obtained.  For purposes of doing so, Defendants will, pursuant to confidentiality order, provide the VINs of Settlement Class Vehicles to the Claim Administrator and Class Counsel.

Class Notice shall be provided by U.S. first class mail by the Claim Administrator within 100 days of the date of the entered Preliminary Approval Order.  Any reimbursement claims, together with the required signed claim forms and supporting documentation, must be mailed to the Claim Administrator no later than 120 days after the Notice Date.  Claimants shall receive reasonable notice thereof, and 45 days to cure, any deficiencies in the claim submission.

Approved reimbursement claims will be paid within 100 days of the date of submission of a properly completed claim form and all required supporting documentation, or 100 days from the Effective Date of the Settlement, whichever occurs later.  The Claim Administrator's decisions shall be binding and non-appealable, except that a Settlement Class Member may seek attorney review of a denial by so requesting it from the Claim Administrator within 15 days of the date of the mailing of the decision.  If attorney review is timely requested, class counsel and defense counsel will confer and attempt in good faith to resolve the dispute.  The Claim Administrator shall provide information and declarations as is customary and may be needed to support approval of Class Settlement.

Plaintiffs request that the Court preliminarily certify the proposed Settlement Class and preliminarily approve the proposed Settlement, permitting the Settlement Class to be given

9

notice of the terms of the Settlement so that they can make an informed decision as to its merits.

Accordingly, Plaintiffs request that the Court enter an order:

(1)    Preliminarily approving the Settlement as set forth in the
       Settlement Agreement;

(2)    Preliminarily certifying the Settlement Class;

(3)    Preliminarily appointing Interim Class Counsel as Settlement
       Class Counsel and the named Plaintiffs as Settlement Class Representatives;

(4)    Preliminarily appointing Angeion Group as the Settlement Claims
       Administrator;

(5)    Approving the proposed Class Notice and Notice Plan; and

(6)    Scheduling a Final Fairness Hearing.

**IV.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT**

**A.    THE STANDARD FOR PRELIMINARY APPROVAL OF A
       SETTLEMENT CLASS**

The Third Circuit favors settlement of class action litigation. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Settlement Agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts."). Where the parties can resolve the litigation through good faith and arms-length negotiations, judicial resources can be preserved, and the public interest is furthered. *Bell Atlantic v. Bolger*, 2 F.3d 1304, 1314 n.16 (3d Cir. 1993); *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333 (3d Cir. 2010) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004)) ("We reaffirm the 'overriding public interest is settling class action litigation.'").

Judicial review of a proposed class action settlement consists of a two-step process. First, the court determines whether it should grant preliminary approval of the settlement. Second,

after notice of the settlement is provided to the class, the court conducts a fairness hearing to determine whether it may grant final approval of the settlement.  Under the amendment to Fed. R. Civ. P. 23(e) which became effective December 1, 2018, preliminary approval requires that the parties proposing the settlement make a showing that the Court is likely able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.  *See* Fed. R. Civ. P. 23(e)(1)(B).

Preliminary approval is generally "granted unless a proposed settlement is obviously deficient."  *Udeen v. Subaru of Am., Inc.*, 2019 WL 4894568, at *2 (D.N.J. Oct. 4, 2019) (internal quotation omitted); *see also Rudel Corp. v. Heartland Payment Sys., Inc.*, 2017 WL 4422416, at *2 (D.N.J. Oct. 4, 2017) (applying "obviously deficient" standard to preliminary approval of class action settlement).  Generally, "[w]here the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted."  *Udeen*, 2019 WL 4894568 at *2 (internal quotation omitted).  As set forth below, these standards are easily met here.

### B. THE SETTLEMENT FOLLOWED ARM'S-LENGTH NEGOTIATIONS CONDUCTED IN GOOD FAITH BY WELL-INFORMED AND EXPERIENCED COUNSEL

In this case, the Settlement did not occur until counsel conducted a thorough investigation of the underlying claims.  Thereafter, the parties engaged in extensive, vigorous discussions and arm's-length negotiations together with numerous exchanges of information and settlement proposals.  The parties attended an in-person settlement conference with Chief Magistrate Judge Mark Falk on January 15, 2020; and then followed-up with five separate status/settlement conferences by videoconference or phone on June 24, 2020, August 4, 2020, October 20, 2020,

11

November 19, 2020, and January 22, 2021.  The parties also engaged the services of Bradley A. Winters, a well-respected and neutral JAMS mediator, and participated in one full day of mediation on January 14, 2021, which contributed to a resolution of the case.  Plaintiffs' attorneys are well-seasoned trial and class action attorneys with substantial experience in class actions, including automobile class actions. *See* Klorczyk Decl. Exhibit 2 (Bursor & Fisher firm resume).  These factors support approval here. *See Glaberson v. Comcast Corp*., 2014 WL 7008539, at *4 (E.D. Pa. Dec. 12, 2014) (a settlement is presumed to be fair "when the negotiations were at arm's length, there was sufficient discovery, and the proponents of the settlement are experienced in similar litigation"); *Alves v. Main*, No. 01-CV-789, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2013) ("The participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties."), *aff'd*, 559 F. App'x 151 (3d Cir. 2014).

The Class Representatives have no conflict of interest with the remainder of the class, and they share the Class's interest in obtaining recovery for themselves and other class members with respect to the issue addressed by the Settlement.  The Class Representatives have cooperated fully in providing relevant documents and discovery and have been actively engaged in the litigation.

 **C.**  **THE RELIEF PROVIDED TO THE CLASS IS ADEQUATE GIVEN THE COSTS, RISKS, AND DELAY OF TRIAL AND APPEAL**

The relief provided in the Settlement constitutes a valuable and substantial benefit to Class Members.  The terms of the Settlement provide for a service action that will enable a present owner or lessee of a Settlement Class Vehicle to have the Drain Valve removed from said vehicle by an authorized Volkswagen dealer, free of charge.  Settlement Class Members who presently own or lease a Settlement Class Vehicle will have one year from the Notice Date,

or from the first date the U.S. service action becomes available, whichever is later, to have said service action performed on their vehicle.  Additionally, a new air filter will be installed if necessary – such as if the air filer is wet, saturated, or there are other signs of water damage – free of charge in connection with the service action.  Furthermore, the terms of the Settlement call for a reimbursement program available to Class Members who have, prior to the Notice Date, incurred eligible out-of-pocket expenses for the repair of water ingress damage to the air intake system, air filter, engine, turbocharger, or intercooler of a Settlement Class Vehicle that was caused by a clogged Drain Valve.  The Settlement Class Member will be entitled to submit a claim, pursuant to the applicable deadline and requirements, for a reimbursement of seventy-five percent (75%) of the Settlement Class Member's paid out-of-pocket expenses for said repairs (parts and labor) limited to one repair per Settlement Class Vehicle.  Thus, the relief provided to the Class is more than adequate.

In addition, the issues in this action are vigorously disputed, and Defendants have raised a number of substantial defenses, some of which are reflected in their Motion to Dismiss. Defendants also assert there are also potential statute of limitations and other defenses that could preclude recovery as to many of the Settlement Class Members, and will assert potential factual and legal defenses to the issue of class certification.  The proposed Settlement is not only fair, reasonable and adequate in and of itself, but it is even more so when viewed in terms of the risks of non-recovery, the costs and risks of surviving class certification of a nationwide class, a potential summary judgment motion, a battle of the experts and *Daubert* motions, deposing Defendants' witnesses over-seas, a costly and potentially lengthy trial in which the outcome is uncertain, appeals to class certification or a trial outcome, and the significant amount of delay in Settlement Class Members getting a benefit, if any.  Hence, this factor is satisfied.

**D.    THE PROPOSED METHOD OF DISTRIBUTING RELIEF TO THE CLASS, INCLUDING THE METHOD OF PROCESSING CLASS-MEMBER CLAIMS IS EFFICIENT AND EFFECTIVE AND TREATS CLASS MEMBERS EQUALLY**

The Settlement Administrator, paid for by Defendants, is an experienced and well-respected Claims Administrator.  This Administrator will, with the participation of counsel, establish and maintain a dedicated website regarding the Settlement, which will include copies of the Settlement Agreement, Class Notice, and form and pertinent Settlement-related motions and orders; applicable deadlines for objecting, opting out, and mailing of claims; the date, place, and time of the final fairness hearing; and contact information for any questions relating to the Settlement.  The website will be operational on the Notice Date.

Additionally, pending this Court's preliminary approval of the Settlement, the Claim Administrator, for purposes of identifying Settlement Class Members, will obtain from Polk/IHS Markit the names and current or last known addresses of Settlement Class Vehicle owners and lessees that can reasonably be obtained.  For the purposes of doing so, Defendants will, pursuant to confidentiality order, provide the VINs of Settlement Class Vehicles to the Claim Administrator and Class Counsel.

Class Notice shall be provided by U.S. first class mail by the Claim Administrator within 100 days of the date of the entered Preliminary Approval Order.  Any reimbursement claims, together with the required signed claim forms and supporting documentation, must be mailed to the Claim Administrator no later than 120 days after the Notice Date.  Claimants shall receive reasonable notice thereof, and 45 days to cure, any deficiencies in the claim submission.

Approved reimbursement claims will be paid within 100 days of the date of submission of a properly completed claim form and all required supporting documentation, or 100 days from the Effective Date of the Settlement, whichever occurs later.  The Claim Administrator's

decisions shall be binding and non-appealable, except that a Settlement Class Member may seek attorney review of a denial by so requesting it from the Claim Administrator within 15 days of the date of the mailing of the decision.  If attorney review is timely requested, class counsel and defense counsel will confer and attempt in good faith to resolve the dispute.  The Claim Administrator shall provide information and declarations as is customary and may be needed to support approval of the Class Settlement.

This process is an efficient and effective way of providing substantial benefits to Class Members that are eligible.  Moreover, there are no sub-classes, and all class members have the ability to file claims equally.

E.    THE TERMS RELATED TO ATTORNEY'S FEES, TIMING OF PAYMENT, AND CLASS REPRESENTATIVE INCENTIVE AWARDS

Under the terms of the Settlement, Defendants will pay reasonable attorney's fees to Class Counsel in an amount, to be determined by Chief Magistrate Judge Falk, up to but not exceeding $775,000.00.  Defendant has agreed not to oppose a fee/expense award up to and not exceeding that combined total amount, nor will Class Counsel seek or accept any award exceeding that amount.  Class counsel fees and expenses are to be paid within 21 days following entry of the Final Order and Judgment for Class Counsel Fees and Expenses, subject to Class Counsel's Stipulation Regarding Undertaking re: Attorneys' Fees and Costs (see Exhibit E to the Settlement Agreement).

Additionally, the Settlement Agreement provides that Class Representatives Jodi Crandell, Juan Ontiveros, Jim Kettelkamp, Abe Litchfield, and Jose Suarez may each apply to the Court for a class representative service award of not more than $5,000, to be paid by Defendants.  Any modification or reduction in the amount of the Class Representative incentive payment shall in no way operate to invalidate the Settlement.

15

## V.    THE PROPOSED SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED

A class may be preliminarily certified for purposes of settlement if it conforms to the requirements of Fed. R. Civ. P. 23. *In re Baldwin-United Corp.*, 105 F.R.D. 475, 478 (S.D.N.Y. 1984); Newberg at § 13:64. *See also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997); *In re Prudential Ins. Co. v. America Sales Litigation*, 148 F.3d 283, 307-308 (3d Cir. 1998); *In re Ins. Brokerage Antitrust Litig.*, 2007 WL 2589950 (D.N.J. 2007), *aff'd*, 579 F.3d 241 (3d Cir. 2009). The Settlement satisfies each of the four requirements for class certification under Rule 23(a) and Rule 23(b)(3).

### A.    NUMEROSITY

The numerosity requirement under Rule 23(a)(1) is satisfied where the class is so numerous that joinder of all class members is impracticable. *In re Prudential Ins.*, 148 F.3d at 309; *Zinberg v. Washington Bancorp, Inc.*, 138 F.R.D. 397, 406 (D.N.J. 1990). Here, there were approximately 14,926 Class Vehicles sold by Defendants in the United States and Puerto Rico. Clearly, numerosity has been established.

### B.    COMMONALITY

To satisfy the commonality requirement under Rule 23(a)(2), Plaintiffs must demonstrate that "'at least one question of fact or law' is common to each member of [the] prospective class." *Stewart v. Abraham*, 275 F.3d 220, 227 (3d Cir. 2001). Class members do not have to share identical claims or claims arising from the same operative facts. *See In re Prudential Ins.*, 148 F.3d at 319; *Baby Neal v. Casey*, 43 F.3d 48, 57 (3d Cir. 1994) ("Rule 23 [does] not require all plaintiffs actually to suffer the same injury; rather, the fact that the plaintiffs were subject to the injury, that they faced the immediate threat of these injuries, suffice[s] for Rule 23."). The commonality standard of Rule 23(a)(2) is not a high bar. *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004). Here, there are common questions of law and fact, including but not limited to:

(a) Whether the Drain Valves in in the Class Vehicles contain a design defect and/or a defect in material, manufacturing and/or workmanship;

16

(b) Whether Defendants knew or should have known of the alleged defect prior to sale of the Settlement Class Vehicles;

(c) Whether Defendants had, and breached, a duty to disclose the alleged defect;

(d) Whether Defendants misrepresented or omitted material facts regarding the alleged defect or breached any warranties or statutory duties; and

(e) Whether Plaintiffs are entitled to damages or other relief.

Thus, commonality is satisfied.

## C.    TYPICALITY

To satisfy the typicality requirement of Rule 23(a)(3), the claims or defenses of the representative parties must be typical of the claims or defenses of the class. *See Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 631 (3d Cir. 1996). Typicality seeks to ensure that there are no conflicts between the class representative claims and the claims of the class members so that the "named plaintiffs have incentives that align with those of absent class members." *Baby Neal*, 43 F.3d at 57.

Class claims arise out of ownership or lease of Class Vehicles which were equipped with drain valveswere all allegedly exposed to the same alleged acts and/or omissions.. As such, Plaintiffs' claims are typical to those of the class, and there are no conflicts between them. The typicality requirement is satisfied.

## D.    ADEQUACY OF REPRESENTATION

Adequacy of representation is a two-part inquiry that applies to both Plaintiffs' Counsel and Plaintiffs. First, adequacy of representation asks whether Plaintiffs' attorneys are qualified, experienced, and able to conduct the litigation. *In re Prudential*, 148 F.3d at 312 (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 800 (3d Cir. 1995)). Second, adequacy of representation "serves to uncover conflicts of interest between named parties and the class they seek to represent." *In re Prudential*, 148 F.3d at 312 (citing

17

*Amchem Products v. Windsor*, 521 U.S. 591, 594 (1997)).  Proposed Class Counsel have, in aggregate, nearly 33 years of experience concentrating in consumer class actions and have been appointed Class Counsel in numerous other class action proceedings.  Neither Plaintiffs nor their attorneys have any interests that are contrary to or conflicting with the class members.  Under these facts, the adequacy of representation prong has been satisfied.

### E.   THE REQUIREMENTS OF RULE 23(b)(3) ARE SATISFIED

The proposed class also meets the requirements of Rule 23(b)(3).  Rule 23(b)(3) allows class certification of settlement classes where common questions of law and fact predominate over individual questions and class treatment is superior to individual litigation.  When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only and need not consider whether the case would be manageable if actually brought to trial.  *Amchem Prods., Inc.*, 521 U.S. 591, 620 (1998); *Prudential*, 148 F.3d 283 at 321.  In discussing predominance, the Third Circuit has reiterated that the focus of the "inquiry is on whether the defendant's conduct was common as to all of the class members, and whether all of the class members were harmed by the defendant's conduct."  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 298 (3d Cir. 2011) (*en banc*); *see also In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 187 (D.N.J. 2003); *In re Community Bank of N. Va.*, 418 F.3d 277, 309 (3d Cir. 2005).  As indicated by the Supreme Court in *Amchem*, "predominance is a test readily met in certain cases alleging consumer fraud . . ." 521 U.S. at 625.

Here, the core questions relate to whether there was an alleged uniform defect in the Settlement Class Vehicles' Drain Valves and whether the Settlement Class sustained damages. The common issues discussed *supra* predominate over any individual issues with respect to Settlement Class Members.   Accordingly, the predominance prong of Rule 23(b)(3) is satisfied.

18

The second prong of Rule 23(b)(3) is also readily satisfied.  Here, class resolution is superior to other available methods for the fair and efficient adjudication of the controversy.  *See In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 533 (3d Cir. 2004).  The superiority requirement "asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those alternative available methods of adjudication."  *Id.* at 534.

Rule 23(b)(3) sets forth certain factors that may be pertinent in considering whether a class action is a superior method by which to adjudicate a controversy.  *See In re Mercedes-Benz*, 213 F.R.D. at 186 ("The Rule sets forth a non-exhaustive list of factors to be weighed.").  These factors include:

> (A) the interests of members of the class in individually controlling the prosecution of defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.

The Settlement Class satisfies the superiority requirements because of the large number of class members, and the relatively small value of each claim in relation to the expenses of prosecuting a lawsuit.  The alternative to class treatment would be numerous individual lawsuits and/or multiple lawsuits for relatively small amounts of damages.  This would be uneconomical for potential plaintiffs because litigation costs would dwarf any potential recovery.  Absent class action treatment, class members here probably would not obtain any relief.  In contrast, a class action "facilitates spreading of the litigation costs among the numerous injured parties and encourages private enforcement of the statutes."  *Prudential*, 148 F.3d 283 at 315-316.

In the Third Circuit, there is an additional requirement of ascertainability; the class must be currently and readily ascertainable based on objective criteria.  There must be a reliable and administratively feasible way to identify class members.  *Coleman v. Commonwealth Land Title*

*Ins. Co.*, 318 F.R.D. 275 (E.D. Pa. 2016). In this litigation, Settlement Class Members can easily be identified by VIN and State DMV registration records which will establish the current and former owners and lessees of the settlement Class Vehicles. Claim forms, which require proof of ownership and other records for reimbursement of claims further establish that this class is ascertainable under the Third Circuit's requirements.

In sum, preliminary certification of the proposed Settlement Class is appropriate under Federal Rules of Civil Procedure 23(a) and 23(b)(3). This Court should preliminarily certify the proposed class for purposes of settlement.

## VI.    THE FORM AND MANNER OF NOTICE SHOULD BE APPROVED

Under Fed. R. Civ. P. 23(e), Class Members are entitled to notice of any proposed settlement before it is ultimately approved by the Court. Manual for Complex Litigation, Fourth Ed., § 21.633. Under Rule 23(e) and relevant due process requirements, adequate notice must be given to all absent Class Members and potential class members to enable them to make an intelligent choice as to whether to opt-out of the class. *In re Prudential*, 148 F.3d 283 at 326-27. Neither Rule 23 nor due process considerations require actual notice to every class member in every case. *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985). Rather, "notice reasonably certain to reach most of those interested in objecting" is required "to safeguard the interests of all." *Id*.

In this case, the parties have negotiated and agreed upon a comprehensive notice program consisting of mailed notice with a copy of the notice to be placed on the Settlement Website. Through these efforts, absent Class Members will receive adequate notice of the Settlement.

Finally, the Notice satisfies all legal requirements and provides a comprehensive explanation of the Settlement in simple, non-legalistic terms. The notice sets out all the

information required by Rule 23(c), including, the nature of the action, the definition of the class, the class claims, issues or defenses; the benefits afforded by the Settlement; how and when class members may claim such benefits; details informing class members that they may enter an appearance through an attorney if they desire; how to object and the objection deadline; the time and manner of requesting exclusion; the class members' rights; applicable deadlines including for submission of reimbursement claims, other applicable dates including the final fairness hearing, and the binding effect of the class judgment on members under Rule 23(c)(3).

Under Rule 23(c), the Court should consider the contents of class notice as well as the method of dissemination. *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 328 (E.D. Pa. 2007); *In re Prudential*, 148 F.3d 283 at 327. The requirements for the content and dissemination of the Notice have been satisfied and the Notice should be approved.

## VII.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order that grants preliminary approval of the proposed Settlement as set forth in the Settlement Agreement, and: (a) conditionally certifies the proposed Settlement Class for purposes of settlement only pursuant to Rule 23(b)(3); (b) conditionally appoints the named Plaintiffs as Settlement Class Representatives and their attorneys, previously named as Interim Class Counsel, as Settlement Class Counsel; (c) approves and directs notice to Settlement Class Members in the manner and timing set forth in the Settlement Agreement; (d) conditionally approves the Claims Administrator; and (f) schedules a final fairness hearing for purposes of determining final approval of the Settlement and Class Counsel's motion for reasonable attorney's fees/expenses and Class Representative Service Awards.

21

Dated: May 27, 2021

Respectfully submitted,

**BURSOR & FISHER, P.A.**


By:_____/s/ Frederick J. Klorczyk III_____
           Frederick J. Klorczyk III

Frederick J. Klorczyk III
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: fklorczyk@bursor.com

**BURSOR & FISHER, P.A.**

Joel D. Smith (*pro hac vice*)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
Email: jsmith@bursor.com

*Attorneys for Plaintiffs and the*
*Proposed Settlement Class*

22